Vermont Street M. E. Church of Quincy

*v.*

John G. Brose.

*Filed at Springfield September 28, 1882.*

1. Building contract—*construed—as to which party is to furnish material.* The first part of an agreement for the building and completion of a church edifice, provided that the contractor was to complete the same by a day named, "weather permitting, and stone for front and footing being furnished." This clause standing alone, it was considered, would obligate the other party to furnish the stone for the front and footing, and when, fol-

lowing this, the church authorities covenanted to pay the contractor a certain sum of money in consideration that he would *"furnish"* all materials, and fully and faithfully execute the work, etc., this was held to bind the contractor to furnish "all the materials" necessary to complete the work which the other party had not previously contracted to furnish, namely, the "stone for front and footing."

2. SAME—*who shall determine as to the quality of the work.* Where a building contract provides that the work shall be done in a skillful and workmanlike manner, to the "full and complete satisfaction of A, architect, (who drew the plans and specifications,) or his assistant superintendent, B," if the work is done to the satisfaction of either party named it would seem to be in compliance with the contract. Such a clause does not require the work to be done to the satisfaction of both. If either approves the work, it will be sufficient.

3. So, where, in such a case, the architect did not superintend the work as it progressed, but both by the terms of the contract and the appointment of the principal architect the assistant or local superintendent had the supervision of the work as it progressed, without objection of either party, the architect can not, after the work has been done, be permitted to say it was not done to his satisfaction, and reject all that had been done in the erection of the building, and which had been approved by the local superintendent, and thus defeat a recovery of the price agreed to be paid.

4. SAME—*delay in work caused from owner not furnishing materials.* Where the delay of a contractor in completing the work on a building is attributable to the neglect of the owner of the same to furnish stone, as was his duty under the contract, and the time for such completion had been extended by mutual agreement, the owner will have no just cause of complaint on that score.

5. SAME—*defect in work occasioned by the owner—contractor not answerable.* Where a party having a building erected for him, under the contract, furnishes the contractor face stone to be used, which is of such character as to render it impracticable to lay the same in its "natural bed," and the superintendent for that reason directs the same to be laid otherwise, with the approbation of the owner, which is so done, and by so doing the best wall is made that could be made with such material, the contractor will not be at fault, and if any defects exist in the wall on account of the manner in which the stone is laid, it must be attributed to the fault of the owner in neglecting to furnish suitable stone for that purpose.

6. SAME—*waiver of condition requiring estimates and certificates of work before payment.* Where a building contract requires the architect or superintendent, as a condition precedent to any payments, to make estimates of the work done, materials, etc., as the work progresses, and give certificates on the same, reserving ten per cent until the whole shall be completed and accepted, when the whole shall be paid, and no such estimates are ever made

or certificates given, and installments of the contract price are paid as the work proceeds, without any certificates, this will amount to a waiver of such condition precedent to the payments.

7. SAME—*when workman may recover without certificate required.* Where work is done and materials furnished in the erection of a building under the supervision of a superintendent, who is to be satisfied with the same, and give certificates to the contractor on which to receive his installments of the contract price, which he fails to do, and extra work is done under his direction, and payments are made from time to time on the work until it is completed and possession taken, and such superintendent, when called on for his certificate, neither gives nor refuses to give it, but tells the contractor to wait until the building, which is a church, is dedicated, when he shall be paid, it will be presumed that the work has been done to his satisfaction, and a recovery of the balance due may be had, including the percentage kept back, and the extra work, as well as for the balance due him on the contract.

8. SAME—*as to duty of contractor to rebuild a portion of the building after completion.* Where, after the completion of a church building to the satisfaction of the superintendent appointed to supervise and direct the work, the architect examined the same, and condemned the stone work, and required a large portion of the front wall to be taken down and rebuilt "with good, large stones, none less than twelve inches in the wall," and the congregation had taken possession of the building, it was *held,* not to be the duty of the contractor to comply with this requirement, even if the architect had a right to pass upon the work, until the church authorities should offer to surrender possession of the building and furnish suitable stone with which the work could be done, the contract requiring the stone to be furnished by them.

9. CONTRACT—*construed with reference to construction of parties.* It is allowable always to look to the interpretation the contracting parties place on their agreement, either contemporaneously or in its performance, for aid in ascertaining its meaning. No extrinsic evidence can be more valuable.

10. EVIDENCE—*comparative weight in a given case.* On an issue whether the stone in a church edifice had been set far enough in the wall to give it sufficient strength, the testimony of witnesses who did the work, having a better opportunity of knowing how far the stone extended into the wall, is more valuable, and entitled to more weight, than that of witnesses condemning the stone work, who obtained the information upon which to base their judgment from outside measurements, made after the wall had been completed.

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of Adams county; the Hon. JOHN H. WILLIAMS, Judge, presiding.

Mr. J. F. Carrott, for the appellant:

By the contract the certificate in writing of the architect or superintendent is a condition precedent to the right of the petitioner to recover, and there is no proof that it was ever had. *McAuley* v. *Carter et al.* 22 Ill. 53; *Packard et al.* v. *Van Schoick*, 58 id. 79; *Clark et al.* v. *Pope et al.* 70 id. 128; *Coey* v. *Lehman et al.* 79 id. 173; *Downey* v. *O'Donnell et al.* 92 id. 559.

The decision of the architect is binding in this case, except for fraud shown. Parties to a written agreement are bound by its terms, unless fraud is shown. *McAvoy* v. *Long et al.* 13 Ill. 147; *Railroad Co.* v. *Spurck et al.* 24 id. 587; *Wallace et al.* v. *Curtis*, 36 id. 156; *Snell et al.* v. *Brown et al.* 71 id. 134; *Stadhard* v. *Lee*, 113 Eng. C. L. 364.

Before payment could be demanded all of the work was to be fully and faithfully performed, to the satisfaction of the architect, and accepted by him. *Smith* v. *Briggs*, 3 Denio, 73; *Smith* v. *Brady*, 17 N. Y. 173; *Glacius et al.* v. *Black*, 50 id. 145; *McCarren* v. *McNulty et al.* 7 Gray, 139; *Zaliski* v. *Clark*, 44 Conn. 218; *Goodrich* v. *Van Norwich*, 43 Ill. 545; *Clarke* v. *Watson*, 114 Eng. C. L. 278; *Scott* v. *Corp. of Liverpool*, 60 id. 334.

Taking possession of the building is not a waiver of the plain requirements of the contract. *Smith* v. *Brady*, 17 N. Y. 173; *Coey* v. *Lehman et al.* 79 Ill. 173; *Munro* v. *Butt*, 92 Eng. C. L. 739; *Merford* v. *Martin*, 6 T. B. Mon. 609.

Appellee did not build and complete the church in "a careful, skillful and workmanlike manner," and therefore he can not recover any compensation for his work, labor and materials. *Ellis* v. *Hamlen*, 3 Taunt. 52; *Moneypenny* v. *Hartland*, 2 C. & P. 378; *Farnsworth* v. *Garrard*, 1 Camp. 38; *Denew* v. *Daverell*, 3 id. 453; *Barten* v. *Butler*, 7 East, 479; *Harmer* v. *Cornelius*, 5 Com. B. (N. S.) 236; *Martin* v. *Houck*, 39 Mich. 431.

The contract was entire, notwithstanding payments were to be· made in installments as the work progressed, and the entire performance of the work to the full satisfaction of the architect was a condition precedent to the payment of the price,. and courts can not absolve men from their legal engagements. *School Trustees* v. *Bennett*, 3 Dutch. 513; *Grossman* v. *Brown*, 32 N. J. Eq: 43; *Jennings* v. *Camp*, 13 Johns. 94.

Where a party engages, unconditionally, by express contract, to do an act, performance is not excused by inevitable accident or other unforeseen contingency not within his con·trol. *Adams* v. *Nichols,* 19 Pick. 275; *Schwartz* v. *Saunders,* 46 Ill. 21; Chitty on Contracts, 568.

Mr. WILLIAM W. BERRY, for the appellee:

Where there are two clauses in a contract so totally repugnant to each other that they can not stand together, the former shall be received and the latter rejected. Shepard's Touchstone, 88; Chitty on Contracts, (9th Am. ed.) 94.

A sweeping clause, followed by a specific enumeration in a written contract, will ·be controlled by the latter, where there is manifest conflict or repugnancy between the two. Bishop on Contracts, sec. 595; Pollock on Contracts, 409; *Rooke* v. *Kensington*, 3 Kay & J. 753; *Bulkley* v. *Wilford*, 8 D. & R. 542.

In a doubtful case, the interpretation which the parties themselves have, by their conduct, practically given their contract, will prevail. Bishop on Contracts, sec. 598; *Chicago* v. *Sheldon*, 9 Wall. 50; *Garrison* v. *Nute*, 87 Ill. 215.

Where, by the terms of a contract, an architect's certificate of fulfillment is a condition precedent to payment, and the architect unreasonably and in bad faith refuses the certificate, the builder may recover under other proof of performance. *Thomas* v. *Fleury*, 26 N. Y. 26.

Mr. CHIEF JUSTICE SCOTT delivered the opinion of the Court:

The petition in this case was brought by John G. Brose, against the Trustees of the Vermont Street M. E. Church, to establish a mechanic's lien on the property belonging to the defendant corporation. Under a written contract between the parties, petitioner undertook to erect for defendants a church edifice, according to plans and specifications referred to and made a part of the contract. That part of the work which petitioner was to do was not completed by the time mentioned in the contract. It is alleged it was on account of the fault of defendants the delay occurred. The case is not defended on the ground the work was not finished within the time limited by the contract. It is sufficiently shown, both by the averments of the petition and the evidence, the time for doing the work was extended by mutual agreement.

In two particulars there is some ambiguity in the contract,—first, who was to furnish the "stone for the front and the footing;" and second, to whose "full and complete satisfaction" was the work to be "finished and completed;" but it is thought it readily admits of a construction consistent with the acts of the parties. By ascertaining the meaning of the contract in these respects the case will be relieved of much difficulty. Considering the questions in the order stated, it will be seen that in one part of the contract it is provided the work shall be completed by a day fixed, "weather permitting, and stone for front and footing being furnished." Standing alone, this clause would be readily understood to obligate defendants to furnish "stone for front and footing," because petitioner was not bound to finish the work unless the weather would permit, and the "stone for front and footing" was furnished. The difficulty arises out of a clause in the covenanting part of the contract on the part of the defendants, wherein they agree to pay petitioner a certain sum of money in consideration he will furnish "all materials, and

fully and faithfully execute the work to the full and complete satisfaction of the architect," and at the time mentioned. Following, as this does, the former provision cited, it may well be understood to bind petitioner only to furnish "all the materials" necessary to complete the work which defendants had not previously contracted to furnish. It will be seen the subsequent conduct of the parties renders this construction of the contract reasonably certain. It is allowable always to look to the interpretation the contracting parties place on their agreement, either contemporaneously or in its performance, for assistance in ascertaining its true meaning. No extrinsic aid can be more valuable. In their original answer defendants admitted the allegation of the petition they were to furnish the "stone for front and footing," but in their answer to an amended petition that admission was withdrawn. Without attaching much importance to what the answers contained, as neither of them was under oath, it is of much more importance to ascertain what the parties did in the performance of the contract. In that respect their acts are the result of their understanding of their agreement, and afford valuable aid in ascertaining its meaning. Looking at what was done, it is seen defendants from first to last, while the work was in progress, recognized their obligation to furnish "stone for front and footing," and did in fact furnish that which was used in the building. Both parties so understood the agreement, in this respect, while it was being performed, and their conduct is consistent with a reasonable construction of the contract.

As respects the second inquiry, it is provided the work is to be done by petitioner in a skillful and workmanlike manner, to the "full and complete satisfaction of Geo. H. Edbroke, architect, or his assistant superintendent, John Crockett." Under this clause of the agreement, if the work was done to the satisfaction of either party named it would seem it would be in conformity with the contract. It is not agreed that

both of them shall be satisfied with the work.    Should either of them approve the work it would be sufficient.    It is true, in a subsequent clause of the agreement it is said the work shall be done to the "full and complete satisfaction of Geo. H. Edbroke, architect."    Here again the conduct of the parties renders valuable aid in ascertaining the true construction of the agreement in this respect.    It is evident it was not intended that Edbroke, who drew the plans and specifications, was to have the immediate and personal superintendence of the work.    He says himself he did not see the work from the time of its commencement till he was called to inspect it in February, 1877, and that John Crockett was appointed by him local superintendent.    What he did in this respect conforms to a true understanding of the contract.    The work was to be done under the supervision of Crockett, and if satisfactory to him, that would be a compliance with the contract.    Both by the terms of the agreement and the appointment of the principal architect, the local superintendent had the supervision of the work as it was being done, and it would be most unreasonable if, after the work had been done under the immediate direction of the local superintendent, that Edbroke should be permitted afterwards to say it was not done to his "satisfaction," and reject all that petitioner had done in the erection of the building.    This would be most unreasonable, as well as unjust, and especially so when Edbroke had not seen the work as it progressed, and had absented himself, and left it all to the supervision of Crockett, the local superintendent.    Such a result could not have been in the contemplation of the parties, nor will the contract bear any such construction.

Having ascertained the meaning of the contract, so far as relates to the principal matters in contention, but few words of illustration will be necessary to dispose of the objections taken to the decree of the circuit court.    As has been seen, the time for completing the work was extended by mutual

agreement, and there is no just ground for complaint on that score. The delay arose principally out of the neglect of defendants to furnish stone, as was their duty under the contract. But the most serious complaint is made as to the manner in which the stone was laid on the Eighth street front of the building. Two objections are insisted upon: First, the stone are not set far enough in the wall to give it sufficient strength; and, second, they are set on edge, when skillful workmanship would require they should be laid as in their "natural bed." As respects the point made the face stone is not laid far enough in the wall to give it the requisite strength to support the superstructure that was proposed to be erected thereon, it may be said the evidence is conflicting. On this question a good deal of testimony was taken. That given by petitioner, and witnesses introduced on his behalf, seems entitled to most weight. All the witnesses skilled in that kind of labor say it is quite difficult, if not impracticable, to ascertain how far face stone extends into the wall, after it is finished, without tearing it down. Very unsatisfactory are all outside measurements. Witnesses that did the work, of course had the best opportunity to know how far the stone extended into the wall, and relying on the testimony given by that class of witnesses, as the court was warranted in doing, its conclusion was justified the work was reasonably well done in that regard. Most of the witnesses that condemn the stone work because not of sufficient thickness, obtained their information upon which they base their judgments upon outside measurements, made after the wall had been completed; and certainly their evidence is not as reliable as the testimony of persons who saw the work as it was being done.

Concerning the manner in which the face stone were laid, it sufficiently appears they were laid on their edge, under the direction of Crockett, the local superintendent, with the express consent of the building committee of the church,

of which the superintendent was himself a member. This point in the case is established by a very clear preponderance of the evidence. Petitioner states most positively he was directed, both by the committee and the superintendent on the ground directing the work, to lay the stone as he did, and no one denies what he says on that subject. This fact in the case may, therefore, be taken as having been proved past all doubt. It is no doubt true it would have made a better wall had the stone been laid as in their "natural bed," but that, the testimony shows, was impracticable, and it was for that reason the local superintendent directed they should be laid otherwise. The stone for this front was furnished by defendants, and they were told it could not be laid as in its "natural bed," and thereupon the superintendent, with the approbation of the committee, directed the stone should be laid on its edge, as was done. There is testimony that seems entitled to the utmost confidence, that the best wall it was practicable to make, using the stone furnished by defendants, was, in fact, made. If, then, any defect exists in the wall on account of the manner in which the stone were laid, it is not attributable to petitioner, but to defendants themselves, in neglecting to furnish suitable stone for that purpose.

Passing to the consideration of another branch of the case, it may be conceded the building contract made either the architect's or the assistant superintendent's certificate a condition precedent to the payment of any installment petitioner was to receive for the work done by him. Under the contract it was the duty of the architect to make estimates of the work done, and material used and inwrought in the building, and give certificates on such estimates, reserving a certain per cent until the whole work should be finished and accepted by the architect, when the whole consideration should be paid, provided "said superintendent" should certify, in writing, petitioner was entitled to it. This part of the

contract was waived by the parties, and installments of the contract price were paid to petitioner as the work progressed, without any certificate from the architect or local superintendent, or without any objection on the part of any one as to the character of the work done or being done. It is only as to the balance remaining unpaid after the work was finished that it is now insisted it is a condition precedent to its payment that petitioner should have the architect's certificate. But who is to make the final certificate upon which petitioner shall be entitled to the balance due him on the work? By the contract it is the "said superintendent." Who is the superintendent? No one is mentioned in the contract by that description except Crockett. He is designated as "local superintendent" and as "assistant superintendent," while Edbroke is always spoken of as "architect." It will be observed that when petitioner reported to Crockett the work was finished, and asked for a certificate, he was told to wait until the building should be dedicated, and he would be paid the balance of the contract price, and for extra work performed at the request of defendants. He never refused to give a certificate, but simply omitted to do it, as had been done when former payments were made. There was no suggestion he should first obtain the certificate of the architect.

But Edbroke did examine the work after petitioner alleges he had finished it, and condemned much of the stone work, and some other work, as not conforming to the plans and specifications, and that, it is insisted, is fatal to any recovery. Neither defendants nor petitioner paid any attention to the suggestions of the architect as to the changes that should be made in the work to make it conform to the plans and specifications. The congregation, represented by defendants, had then taken possession of the building, and were using it for church purposes. It is evident they did not expect petitioner to comply with the suggestions of the architect. It will be

seen the architect required a large portion of the front wall on Eighth street to be taken down by petitioner, and rebuilt by him, "with good, large stones, none less than twelve inches in the wall." Of course it was impracticable to tear down and rebuild the walls while defendants retained possession, and it was certainly not his duty to do it until defendants should furnish suitable stone "for front and footings." They never offered to surrender the possession of the building, or furnish suitable stone with which the work could be done, and it is, therefore, plain, defendants did not expect or desire petitioner to comply with the suggestions in that regard made by the architect.

But aside from this view, the architect's certificate was not indispensable to a recovery. As has been seen, if the work was done to the satisfaction of either the architect or the assistant superintendent, it was a compliance with the contract. The architect did not see the work from the time it was commenced until it was finished. He absented himself, and committed the supervision of the work exclusively to the "local superintendent." It was done under his immediate supervision, and as he made no objection to the work as it progressed, nor to it after it was finished so far as it could be, it will be presumed it was done to his "full and complete satisfaction." That was all petitioner was obligated to do. His contract did not require him to do the work to the satisfaction of both the architect and the local superintendent. Having committed the work to the supervision of the local superintendent named by himself, with the consent of defendants, and since it was done according to his direction, it would be most unreasonable to hold that because it was not done to the satisfaction of the architect, petitioner could recover nothing for the expenditure of labor and materials. The contract only obligated petitioner to do the work to the satisfaction of either the architect or his assistant superintendent, and since the architect committed the exclusive

supervision of the work to the local superintendent, and the work was done under his direction, it does not lie in the mouth of the architect to say the work was not satisfactory to him. That would be unjust, as well as most unreason-able. It would not be in accordance with the obvious mean-ing of the contract, and defendants may not make the action of the architect a pretense for withholding from petitioner the value of his labor, under the contract. As before re-marked, Crockett, under whose direction the work was done, never refused to give the requisite certificate, but simply neglected to do it, as he had omitted to make estimates as the work progressed upon which payments should be made. When asked to make the certificate, he told peti-tioner to wait until the church should be dedicated, and he should be paid. It was the duty of the local superintendent to give or refuse the certificate. He did neither. But if he had refused, it would have been unreasonable, under the facts of the case, and petitioner would not have been prejudiced by such refusal. Deviations from the plans and specifica-tions, made part of the contract, were authorized by mutual understanding, and the proof is entirely satisfactory the work was done as well as it could be, using the stone fur-nished by defendants, under the directions of the local super-intendent. Most fault, as has been seen, was found with the manner of laying the face stone, and the evidence is abund-ant the stone furnished by defendants could not well be laid otherwise. Whatever fault, therefore, there was in that regard, is attributable to defendants, and to no unskillful work on the part of petitioner. A case having many features in common with the one being considered, is *Thomas* v. *Fleury*, 26 N. Y. 26, and the reasoning of the opinion supports the view here taken.

As has been seen, the contract provided the superintendent should make estimates of the work done and materials used and inwrought in the building, and give certificates on such

estimates, reserving ten per cent from the amount of each until the work should be finished and accepted by the architect, when the whole contract price should be paid. No estimates were ever made as the work progressed, and there could be and was nothing reserved, as the contract provides. The circuit court, however, decided petitioner was not, in this or in any other proceeding to establish a mechanic's lien, entitled to demand the ten per cent reserved by the terms of the contract, nor for extra labor and materials. The cross-error by petitioner that calls in question the correctness of that decision, is well assigned, and should have prevailed in the Appellate Court. There having been no estimates made during the performance of the contract upon which any per cent could be reserved, the whole consideration became payable on the substantial performance of the contract, less the sum of $100 for work that could not then be done on account of the default of defendants. Nor is any reason perceived why petitioner should not be allowed for extra labor and materials. The account was presented to the local superintendent, who ordered the same, was approved by him, and payment promised. It was a matter about which the architect knew nothing, and hence could make no truthful certificate concerning the same, and it would have been useless to present the account to him. The extra labor and materials were furnished by petitioner at the request of defendants, and there is no reason why he should not be paid for the same.

The judgment of the Appellate Court will be reversed, and the cause remanded to that court, with directions to reverse the decree of the circuit court, and remand the cause for further proceedings not inconsistent with this opinion. All costs will be taxed to appellants.

*Judgment reversed.*