# MARIA P. STOREY

*v.*

## EUREKA C. STOREY *et al.*

*Filed at Springfield October 3, 1888.*

1. DIVORCE AND ALIMONY—*by consent of parties.* While a husband and wife may not enter into an agreement for divorce, yet the amount of alimony the husband is to pay to the wife, the terms of the payment, and the length of time payment is to be made, may be arranged between them by consent. When husband and wife agree upon alimony, the court will embody their agreement upon that subject in its decree, and it will thereafter conclude the parties.

2. SAME—*decree for alimony—as a charge upon the husband's estate after his death.* A decree for alimony to a wife in a suit for divorce brought by her, was entered, by consent of the parties, that the husband should thereafter pay the wife, so long as she should remain sole, the sum of $2000 per annum. On the same day the decree was entered, the husband executed to his wife a bond, in the sum of $50,000, conditioned for his performance of the decree, which was secured by a deed of trust upon real estate, which bond and trust deed were made binding upon the obligor, his heirs, executors, administrators and assigns, as also was his agreement to keep the property insured for her benefit: *Held,* that the agreement to pay the wife $2000 so long as she should remain unmarried, did not terminate with the life of the husband, but was binding upon his estate after his death.

3. CONTRACT—*construction put upon it by the parties may be adopted.* It is always allowable to look to the interpretation the contracting parties put upon their agreement, either contemporaneously or in its performance, for assistance in ascertaining its true meaning. No extrinsic evidence can be more valuable.

4. SAME — *construction — several writings, when construed together.* Where a decree for alimony is entered by consent of the parties, and the payment of the alimony is also secured by the bond of the husband and a deed of trust upon his real estate, all bearing the same date, the decree, bond and deed of trust will be construed together in determining the intention of the parties as to whether the alimony shall terminate at the husband's death, or shall continue thereafter as a charge upon his estate.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. MURRAY F. TULEY, Judge, presiding.

Mr. MELVILLE W. FULLER, and Messrs. MILLER, LEWIS & JUDSON, for the appellant.

Messrs. TRUMBULL, WILLITS, ROBBINS & TRUMBULL, for the appellee Eureka C. Storey.

Mr. W. C. GOUDY, for the appellees the heirs of Wilbur F. Storey.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

Maria P. Storey was married to Wilbur F. Storey in June 1847 and lived with him as his wife until February 17, 1868. In a suit in the Circuit Court of Cook County, which she instituted against him for divorce, she obtained a decree on February 17, 1868, granting her a divorce for his fault. By the terms of the decree, and of a bond and trust deed dated as of the same day on which the decree was entered, she was allowed alimony to the amount of $2000.00 per annum to be paid to her quarterly in installments of $500.00 each.

After the divorce Wilbur F. Storey married Eureka C. Storey, his present widow and one of the appellees in this case. He died on October 27, 1884.

The question to be decided is whether the divorced wife, Maria P. Storey, the appellant herein, is still entitled to receive from the estate of Wilbur F. Storey the annual allowance so awarded to her as alimony, or whether she ceased to be entitled to the payment of such alimony upon the death of Wilbur F. Storey.

The rule, which prevailed at common law, that the death of the husband necessarily and of itself put an end to the payment of alimony, was applicable only in divorces *a mensa et thoro*, which did not have the effect of finally and forever terminating the marriage relation, but operated as mere temporary separations, leaving all the other marital rights and obligations in full force. In the case of such divorces, the separation was

39—125 ILL.

liable to end at any time by the reconciliation of the parties, and, even if no reconciliation took place, the marriage continued to exist until it was dissolved by death.

But where, as under the statute of Illinois, alimony is awarded upon a decree of absolute divorce, which at once puts an end for all time to the marriage relation, the right of the divorced wife to have the payment of alimony continued to her out of the estate of her deceased husband will depend upon the nature and terms of the decree allowing alimony.

While it is true that husband and wife can not lawfully enter into an agreement for divorce, yet it is well settled that the amount of alimony, which the husband is to pay to the wife, and the terms of the payment and the length of time during which such payment is to continue, may be all arranged between them by consent.

In *Buck* v. *Buck* 60 Ill. 242, the recitals of the decree showed that the whole question of alimony was fixed and settled by the agreement of the parties, and it was there held, that it was competent for the husband to consent to the provisions of the decree, and that, having done so, he was bound by them and could have no relief against his own voluntary agreement. Where the court has jurisdiction of the subject, the consent of the parties will authorize it to enter a valid decree or judgment in accordance with their agreement. Where husband and wife agree upon alimony, the court will embody their agreement upon that subject in its decree. (*Stratton* v. *Stratton*, 77 Me. 377; *Fletcher* v. *Holmes*, 25 Ind. 458; *Carson* v. *Murray*, 3 Paige, 483; *Miller* v. *Miller*, 64 Me. 484).

The decree for alimony entered in the case at bar was a consent decree. A portion of its language is as follows: "And the cause further coming on to be heard on the question of alimony and maintenance of the said complainant, it is thereupon, *by and with the consent of the said parties complainant and defendant*, ordered, adjudged and decreed that the said defendant, Wilbur F. Storey, do from henceforth pay or cause to be

paid to and for the use of the said complainant, *for so long as she may be and remain sole and unmarried,* the sum of $2000.00 per annum to be paid to her quarterly in installments of $500.00 each, the first of which shall be payable on the first day of June A. D. 1868, and the same sum every three months thereafter *during the time aforesaid,* at such place or places in Chicago as she shall from time to time appoint."

In addition to the consent embodied in the decree, and on the same day, on which the decree was entered, Wilbur F. Storey executed to Maria P. Storey a bond in the sum of $50,000.00, conditioned for the performance of the decree of alimony, in which bond, after reciting the terms and provisions of the decree, Mr. Storey uses the following language: "which said order and the terms thereof the said obligor *hath agreed and doth hereby agree, to stand to, abide by and perform.*" It thus appears that he made a written agreement to pay appellant $2000.00 per annum in the manner and for the period above stated.

It is claimed that the words: "for so long as she may be and remain sole and unmarried;" were not intended to indicate the period during which alimony should be paid, but merely to designate the time during the life of Storey, when he should cease to pay the alimony. We do not think that this is the proper construction to place upon the words thus quoted. If appellant had married while her divorced husband was alive, the law would have put an end to any further obligation on his part to pay her alimony. (*Stillman* v. *Stillman* 99 Ill. 196).

We think that the words in question are to be interpreted according to their natural sense and meaning. Their natural meaning is that alimony shall be paid for so long a time as Mrs. Storey shall remain unmarried whether before or after her husband's death. This construction receives support from the language subsequently employed, wherein it is ordered that "the same sum" shall be paid "every three months thereafter *during the time aforesaid.*" The words, "*during the time afore-*

*said,"* designate a continuous period, during which payment is to be made, and not a mere limit at which payment is to cease.

We do not, however, wish to be understood as resting the conclusion announced in this opinion solely and entirely upon the considerations thus far presented, but upon such considerations in connection with and supported by the views hereinafter set forth.

It is urged by counsel for appellees, that the decree in this case merely directs *Storey* to pay the $2000.00, but nowhere intimates that such payment is to be made by *his estate* or his representatives after his death, and, in support of the position that, where no intention to bind the heirs is apparent from the decree itself, the obligation to pay alimony ceases at the death of the husband, reference is made to the case of *Lennahan* v. *O'Keefe,* 107 Ill. 620. In that case, the decree was not based upon the agreement of the parties, but, by its terms, alimony was to be paid in installments *"until the further order of the court."* The right of revision was expressly reserved, and there was an absence of language showing any intention to bind the heirs. Here, however, there is evidence of an intention to bind the heirs.

The decree for alimony in this case further orders "that said sums of money shall be and they are hereby declared to be a lien upon the following premises and lands, but upon none other, situated in the city of Chicago, County of Cook and State of Illinois (to wit: part of lots 1 and 2 in block 57 in the original town of Chicago), and that for the better giving notice of said lien and the security of the payment of the said alimony and the performance of all the requirements of this decree, the said defendant execute and deliver a mortgage or trust deed of said land and premises to Sydney Myers in trust for said Maria P. Storey, in proper form," and further that he shall pay all taxes and assessments against said premises, and shall keep the rents of the buildings on said premises insured to the amount of $2000.00 per annum for her benefit.

A trust deed dated February 17, 1868, was executed by Storey to Myers, as trustee, in accordance with the directions of the decree. This trust deed recites on its face, that it was given to secure the bond above mentioned, and fully sets forth all the terms and conditions of said bond. The decree, the bond and the trust deed, which all bear the same date, must be regarded as one transaction, and must be construed together in determining the intention of the parties in making their agreement for alimony. "It is always allowable to look to the interpretation the contracting parties place on their agreement, either contemporaneously or in its performance, for assistance in ascertaining its true meaning. No extrinsic aid can be more valuable." (*Vermont Street M. E. Church* v. *Brose*, 104 Ill. 206).

Looking at the terms of the bond, which is in the penal sum of $50,000.00, we find Mr. Storey, the obligor, using the following language: "I bind myself, *my heirs, executors and administrators*" for the payment of said sum. In another part of the bond, after agreeing to insure the rents of the buildings on the property and to assign the policies to Mrs. Storey, the obligor uses this language: "such insurance to be kept up as long as the said sum of $2000.00 per annum shall be payable as provided in said decree; and the duty of keeping up said insurance shall be binding upon the *heirs, executors and administrators of the said Wilbur F. Storey* and the grantees and assigns of said premises."

This language of the bond is Mr. Storey's own interpretation of the words, "for so long as she may be and remain sole and unmarried," as used in the decree. If those words did not contemplate that Mrs. Storey was to have her alimony after her husband's death, provided she then continued to be sole and unmarried, it was absurd to make the duty of keeping up the insurance for her benefit binding upon his "*heirs, executors and administrators.*"

Looking at the terms of the trust deed, executed by Mr. Storey, as party of the first part thereto, we find that power

is therein given to the trustee or his successor to sell the premises upon default in the performance of any of the agreements therein contained "on the part of said party of the first part, *his heirs, executors, administrators* or assigns." The trust deed also contains the following language : "Provided, however, that said party of the first part, *his heirs and assigns,* may hold and enjoy said premises until default shall be made by him *or them* in the premises ; * * * and it is hereby * * * agreed by said grantor * * * for himself, *his heirs and assigns,* that in case said trustee * * * shall die * * * it shall * * * be lawful for the Judge, etc., * * * with notice to said Wilbur F. Storey, *his heirs* or assigns to appoint some other person, etc."

It is apparent, from the phraseology thus quoted, that the agreement for the payment of appellant's alimony was to be binding not only upon Mr. Storey in his lifetime, but upon his estate after his death, so long as she continued to remain unmarried. Furthermore, in August, 1882, Wilbur F. Storey conveyed the above premises to one Adams, who executed a note for $30,000.00 and a trust deed to Lambert Tree to secure the same, and, in such note and trust deed, it was agreed between Adams and Storey, that, in case the latter, "*his heirs, executors, administrators or assigns*" should fail to make the payments specified in Mrs. Storey's bond, it should be lawful for Adams, his heirs, etc., to make the same in order to keep the premises from being sold under the incumbrance.

Authority is not wanting to show that a husband may make an agreement for the payment of alimony to his wife during her life, (*Carson* v. *Murray, supra,*), and that he may make such an agreement binding upon his administrator. (*Miller* v. *Miller, supra.*)

Under certain circumstances, as where the wife owns property at the time of her marriage, or has aided her husband by her own exertions in acquiring his estate, it has been held, that she may receive as alimony a certain sum of money or a cer-

tain amount of property in gross to be kept and retained by her as her own. (*Von Glahn* v. *Von Glahn*, 46 Ill. 134).

Here, the equities in appellant's favor appeal strongly against the withdrawal of the support provided for her by the agreement of her husband. She was the wife of his youth and lived with him twenty years or more and bore him one child. By her and his joint exertions the value of his fortune had reached nearly a half million of dollars at the time of the divorce.

We are of the opinion, that the annual allowance of $2000.00 to be paid according to the provisions of the decree of February 17, 1868, as above set forth, should be continued to the appellant so long as she remains sole and unmarried.

The decrees of the Appellate and Circuit Courts are reversed and the cause is remanded to the Circuit Court with directions to proceed in accordance with the views herein expressed.

*Decree reversed.*

SCHOLFIELD and CRAIG, JJ.: We do not concur in the foregoing opinion.