## Fanny F. Stuckey v. L. E. Stuckey, et al.

1. MULTIFARIOUSNESS—*when bill of complaint is.* A bill of complaint is multifarious which seeks to enforce a contract for alimony, and likewise, pursuant to such contract, undertakes to obtain a settlement of her husband's interest in a partnership existing with a third party.

Bill for specific performance. Error to the Circuit Court of Macon County; the Hon. WILLIAM C. JOHNS, Judge, presiding. Heard in this court at the May term, 1905. Affirmed. Opinion filed October 9, 1905.

LE FORGEE & VAIL, for plaintiff in error.

I. A. BUCKINGHAM and REED & REED, for defendants in error.

MR. PRESIDING JUSTICE PUTERBAUGH delivered the opinion of the court.

This is a proceeding in chancery by Fanny F. Stuckey, against her husband, L. E. Stuckey, one of the defendants in error, by which it is sought to enforce a certain contract in writing entered into between them on January 1, 1904. A demurrer was sustained to the bill and a decree entered dismissing the same for want of equity. To reverse such decree the complainant prosecutes this writ of error.

The bill charges in substance that plaintiff in error applied in the Circuit Court of Piatt County in 1903 for a divorce from her husband, one of the defendants; that on January 1, 1904, said suit being then undetermined, she and her husband entered into a written agreement for the purpose of determining their property rights and the question of her alimony; that such agreement, after reciting the purpose for which it was made, provided that the husband should convert into cash his interest in a certain partnership business he was then engaged in with one Daniel Weddle, one of the defendants; that said Weddle should sell their homestead for not less than $1,200, and one-half of the proceeds of such sale of the realty together with one-half of the husband's share of said partnership business, after a set-

tlement of the same between the partners, should be paid
by the said Weddle to the wife and be received by her in
full of all claims for alimony or separate support from her
husband.   That said agreement was entered into in good
faith by the wife and for the sole purpose of the settlement
of their property rights and not in contemplation of any
mutual separation nor in collusion to aid her in obtaining
a divorce; that she trusted the defendant Weddle, and be-
lieved him fair and impartial; that after the making of said
agreement the husband and said Weddle conspired together
to defraud the wife, and said Weddle made a pretended sale
of the homestead to one John A. Malone for $1,200, repre-
senting to the wife the property was worth no more, while,
in reality, it was then, at a fair market valuation, worth
$2,000; that believing such representations the wife signed
a deed with her husband conveying the homestead to John
A. Malone and received $600 for her share of the same; that
in reality said Malone holds said property in trust for
Stuckey, and the $600 received by the wife was advanced
by said Stuckey; that there has never been any settlement
of said partnership business though the husband has appar-
ently severed his connection with the same, and that no
money derived from such business has been paid to the wife
as provided in said contract.

The prayer of the bill is that an accounting be taken and
Stuckey compelled to pay complainant her share of the
value of the homestead and of such partnership business as
provided in said contract.

The bill in this case is clearly multifarious.   It seeks to
litigate the question of alimony between the plaintiff in
error and her husband, one of the defendants in error,
and to compel Weddle to settle the partnership existing
between him and her said husband.   The alimony is a
matter wholly between the plaintiff in error and her hus-
band, and the partnership is a matter wholly between her
said husband and Weddle.   Neither Weddle nor Malone
are parties to the agreement and are not bound by its
terms.   Upon this ground alone, the court might have
properly sustained a demurrer to the bill.

We are further of opinion that the contract sought by the bill to be enforced, was void as contrary to public policy, and that for that reason also, the demurrer was properly sustained.  Although after a decree of divorce has been granted upon a bill therefor filed in good faith and without collusion, an agreement between the parties as to the amount and terms of alimony will be recognized and enforced ·by courts (Storey v. Storey, 125 Ill. 608), it is otherwise when such agreement is made prior to, and independent of the sanction of a decree for divorce, but based upon a decree thereafter to be obtained.  While it is not so expressly stated in words, it may, we think, be reasonably inferred that the object of the present contract and the result sought to be accomplished thereby, tended to stimulate and facilitate the divorce for which proceedings were then pending. Such contracts are manifestly void and incapable of enforcement.   2 Bish. Mar. &. Div., sec. 701.   It appears from the averments of the bill and recitals of the contract, that at the time the contract was entered into, Stuckey and his wife had been married and living together for about seven years, and that disputes had arisen between them resulting in divorce proceedings which were then pending.   It may be fairly assumed, from the facts and circumstances surrounding the parties at the time, that whether or not a defense would be made to the divorce suit was contingent upon the consummation of satisfactory arrangements between. the parties as to alimony, and that the contract in question was the culmination of negotiations to that end.   It is therein recited that performance of the same by Stuckey should be received by his wife "in full of all claims for alimony or separate support," and that Stuckey should be "forever discharged from all obligation toward his said wife imposed by the law and the marriage relation."   This agreement is practically a divorce *a vinculo*, by agreement of the parties, needing only the sanction of a court to legalize the same.   The implied agreement that may be fairly gathered from the language used, is that the consideration for the contract was that no defense was to be

interposed in the divorce proceedings. This is so manifest as not to require further discussion.

The case at bar is similar in principle to that of Hamilton v. Hamilton, 89 Ill. 349, which involved the validity of a contract between husband and wife, pending a suit by the latter for divorce, by which the husband agreed to convey certain real estate to the wife and pay her $500, she agreeing to unite with him in conveying his remaining real estate to a third person, free of her right of dower and homestead. The court held that while in the contract there was no express agreement that the husband would not resist the application for divorce, or that he would consent to a divorce, to permit such a contract as the one there under consideration to be enforced, would open a door for the attainment of divorces by collusion, and that upon that ground the contract was, in its essence and character, against public policy and invalid.

The procurement of divorces in this State by default through collusion of the parties, and imposition upon the courts, has of recent years become so general as to threaten the stability and sacredness of the marriage relation, thus weakening one of the most valuable institutions of human welfare and society. To permit the marriage relation to become merely a thing of bargain and sale should not be tolerated by either judicial or legislative bodies.

The decree of the Circuit Court will be affirmed.

*Affirmed.*