### LUCE
v.
### PROVIDENCE UNION NAT. BANK.
Civ. No. 1554.

United States District Court,
D. Rhode Island.

June 9, 1954.

Gerald W. Harrington, of Edwards & Angell, Providence, R. I., for plaintiff.

Percy W. Gardner and Charles F. Cottam, of Gardner & Sawyer, Providence, R. I., and Joseph V. Cavanaugh, Providence, R. I., for defendant.

FORD, District Judge.

This is an action by Constance Luce, a citizen and resident of Maine, against The Providence Union National Bank, a national bank doing business in Rhode Island, as executor under the will of the late Frederick B. Luce, for the recovery of certain alimony payments claimed to be due from the estate of the deceased and for a declaratory judgment as to the liability of defendant as executor of said estate for future payments of said alimony.

Plaintiff was married to Frederick B. Luce in Chicago on February 27, 1921. One child was born of the marriage, which subsequently died. The marriage was soon marked by dissension and the parties separated within a few months. A decree of divorce between the parties was entered on February 3, 1922 by the Circuit Court of Cook County, Illinois. The decree, which was assented to in writing by the plaintiff, contained the following provision relative to alimony: "It is further ordered that the defendant pay to the complainant alimony in the sum of $165 per month during the time she shall remain single, the first payment to be made immediately upon the signing of this Decree and other payments each month thereafter."

Plaintiff has never remarried since the entry of this decree and is not now married. All the monthly instalments accruing from the date of the decree until the death of Frederick B. Luce on December 15, 1951 have been paid. No alimony has been paid since that date. Plaintiff seeks to recover alimony payments of $165 per month since December 15, 1951 and a judgment declaring

that defendant in its capacity as executor is liable to pay to plaintiff the sum of $165 per month so long as she lives and remains unmarried.

The sole question therefore is whether under the Illinois divorce decree the obligation of Frederick Luce to pay alimony ended with his death or whether it continued as an obligation of his estate so long as plaintiff lives and remains single.

■■ Under Illinois law, which, of course, must govern the decision in this case, the well-established rule is that the obligation to make alimony payments ceases upon the death of the husband unless the decree by its terms expressly and unequivocally provides that the obligation shall continue beyond his death and shall be binding upon his heirs. In the leading case upon the point, Lennahan v. O'Keefe, 107 Ill. 620, at pages 626 and 627, the court said:

" * * * In the absence of *language, showing unequivocally,* that the intention was to bind the heir by such a decree, we are of opinion that it does not do so, but that its life terminates with the life of the defendant * * *.

"Granted that, under our statute, the power of the court to allow alimony is broader than it was in England, still, until the power is exercised by the court its mere existence is, to the present question, unimportant, and when it is exercised *it must and can only be through its decree,* and the decree must, upon its face, show the extent to which the court has exercised, or assumed to exercise, such power. The question in such case is, simply, does the decree, *by its terms,* charge the payment of the alimony upon the heir? We can not presume that it does so. The fact, if such it is, must *affirmatively, and as we have before observed, unequivocally,* appear, * * *." (Emphasis supplied)

In a later case, Craig v. Craig, 163 Ill. 176, 184, 45 N.E. 153, 155, the court reiterated this principle, stating, with respect to a divorce decree ordering payment of alimony, "And unless it appears, unequivocally, that the intention was to bind the heir by the decree, its life terminates with the life of the [husband]."

Plaintiff relies on Storey v. Storey, 125 Ill. 608, 18 N.E. 329, 331, 1 L.R.A. 320, as creating an exception to this principle in the case of consent decrees. While a consent decree was involved in the Storey case, and the court held it was proper to embody in a divorce decree the provisions as to alimony payments which had been agreed upon by the parties, there is no language in Storey indicating that the interpretation of the decree is to be governed by a different rule when it incorporates such an agreement. In the Storey case the decree provided for payments to the complainant "for so long as she may be and remain sole and unmarried". The court, while indicating an inclination to consider the natural meaning of these words to be that alimony was to continue for the rest of her life, even after the husband's death provided she remained unmarried, nevertheless expressly states it is unwilling to base its conclusion on that ground alone. The important consideration which determined the decision of the court is that in the trust deed of certain real estate and the accompanying bond, which the decree required the husband to execute and deliver and which were executed at the time of the decree, there is express language binding not only the husband himself but also his heirs, executors, and administrators to the performance of the obligation of making the alimony payments. This clearly indicates that the obligation was to continue after the death of the husband. Since the decree, the bond, and the trust deed were all executed contemporaneously and were regarded by the court as one transaction, the Storey decision does not create any exception to the rule in the Lennahan case. Rather,

the majority of a divided court found in the documents involved, regarded as incorporated in the decree, an unequivocal and positive expression of the intent of the parties that alimony was to continue after the death of Storey and that his heirs were to be bound to continuance of the payments. Nothing in the nature of such documentary evidence incorporated into the decree has been produced in the present case to show any positive expression of an intent that the alimony payments should continue after the death of the husband.

■ Plaintiff, however, contends that the alimony provisions of the decree are ambiguous and that, therefore, oral testimony should be received as to the true intent of the parties. The alleged ambiguity arises from the fact that the decree says nothing one way or the other about the payment of alimony after the death of the husband. In view of the established Illinois rule that alimony payments cease on the death of the husband unless the contrary intent is unequivocally expressed in the decree, it is difficult to see how mere silence of the decree on the point can be said to create any ambiguity. Moreover, it is well-established that parol evidence can never be used at least in collateral proceedings, to vary or explain a judicial record. Wigmore on Evidence, § 2450; In re Crosby Stores, Inc., 2 Cir., 65 F.2d 360, 361; Bryer v. American Surety Co. of New York, 285 Mass. 336, 337, 189 N.E. 109.

■ In any event, the extrinsic evidence offered by plaintiff, chiefly her own testimony as to the conversation between her and her husband shortly before the divorce, really adds nothing. The substance of it was that he agreed to pay her $165 per month so long as she remained unmarried. No other condition was imposed, but nothing was said by either party as to continuance of payments after his death. In other words, the oral agreement was exactly the same as what later was inserted in the decree.

If the decree is ambiguous, the preliminary conversation is equally so, and does nothing to explain the uncertainty, if any there be, in the meaning of the decree.

■ Plaintiff further argues that the alimony payments should be continued because of certain equities in her favor. In the Storey case the court does refer to equities in the wife's favor, but it does not appear that these were in any way the basis of the decision, or that they would have led to a judgment in favor of Mrs. Storey if it had not been clearly established by the terms of the bond and trust deed that the payments were intended to continue after the husband's death. The equities relied on by plaintiff here are that she bore her husband one child and that before the marriage she gave him advice to change to a position with a different company, as a result of which he eventually became president of his new employer and left an estate of $150,000. In the Storey case Mrs. Storey also bore one child. But the Storey marriage lasted twenty years, while the Luce marriage lasted less than a year, and Mrs. Storey's efforts had aided her husband over those twenty years to build a fortune of a half million dollars before the divorce. The equities relied on in this case can scarcely be compared with those mentioned by the court in the Storey case. In any case, the sole question here is the proper interpretation of the decree actually made by the Illinois court in 1922, and not whether, in the light of what has since happened, a decree in different terms might not have given fairer treatment to Mrs. Luce.

The conclusion must be that under the terms of the Illinois divorce decree here involved, the obligation of Frederick B. Luce to pay alimony ceased with his death, and that plaintiff is not entitled to receive from his estate any alimony payments for any period subsequent to his death on December 15, 1951.

Judgment for defendant in accordance herewith.