**In the Matter of the ESTATE of Howard H. KUHNS, Deceased, Appellant,**

**v.**

**Jean KUHNS, Appellee.**

**No. 2575.**

Supreme Court of Alaska.

May 21, 1976.

Thomas E. Fenton, Fairbanks, for appellant.

Patrick T. Brown and Linda L. Walton of Rice, Hoppner & Hedland, Fairbanks, for appellee.

## OPINION

Before BOOCHEVER, C. J., RABINOWITZ, ERWIN and BURKE, JJ., and DIMOND, J. Pro Tem.

RABINOWITZ, Justice.

This appeal raises the first impression question in Alaska of whether the obligation of the decedent to make alimony payments, pursuant to a property settlement agreement, is enforceable against the decedent's estate.

In April of 1966, appellee Jean Kuhns filed a complaint for divorce against her husband, Howard Kuhns, after approximately 30 years of marriage. After the commencement of the action, the parties entered into a property settlement agreement which was filed in the superior court. The agreement was approved and incorporated by reference in the superior court's findings of fact and decree of divorce. In its relevant parts, the property settlement agreement provided that Jean Kuhns was to receive three lots of real property; certain household furnishings; a 1962 Studebaker; two life insurance policies insuring the life of the decedent; and her personal property. Paragraph 7 of the agreement provided that Howard Kuhns shall pay to Jean Kuhns " . . . in satisfaction of . . . [her] share of the property accumulated by the parties, not otherwise dis-

posed of herein, . . ." the sum of $21,800, to be paid by Howard Kuhns in monthly installments of $181.67. Paragraph 9 further stipulated that "The Court shall enter an order that Defendant shall pay Plaintiff the sum of Six Hundred ($600.00) Dollars per month as alimony, such payments to cease upon the remarriage of Plaintiff." [1]

Following the death of Howard Kuhns, appellee Jean Kuhns petitioned the superior court for allowance of her claim against the estate of the decedent, seeking continued payment of alimony until her remarriage or death. The personal representative of the estate then moved for amendment of the decree of divorce to strike the provision governing alimony. The claim and the motion were then consolidated, and after a hearing the superior court denied the estate's motion. [2] The estate brings this appeal from the superior court's denial of its motion for modification of the decree.

The general rule is that the obligation to make alimony payments, in the absence of an agreement to the contrary, does not survive the death of the obligor. [3] It is established that alimony is essentially an allowance for the support of the beneficiary, in lieu of the right of support which the beneficiary forfeits by the dissolution of the marriage. [4] Since alimony compensates for the support from future income lost because of the divorce, logically the right to alimony should terminate when the income-earning capacity of the obligor is extinguished. [5] Most courts and commenta-

1. The remaining provisions of the agreement concerned child custody and support, a lease of the family home, and Howard Kuhns' assumption of liability for all debts of the marriage.

2. In its order denying the estate's modification motion, the superior court stated in part " . . . the Motion is not well taken for the reason that the property settlement agreement does not provide the termination of alimony payments on the death of the husband . . . . " The superior court presumably allowed the claim of Jean Kuhns, although its order does not explicitly address the subject

of the claim Jean Kuhns presented against the estate.

3. *Desjardins v. Desjardins*, 308 F.2d 111, 117 (6th Cir. 1967).

4. *Cross v. Cross*, 5 Ill.2d 456, 125 N.E.2d 488, 491 (1955); *Snouffer v. Snouffer*, 132 Ohio St. 617, 9 N.E.2d 621, 622 (1937); *Emerson v. Emerson*, 120 Md. 584, 87 A. 1035, 1039 (Md.App.1913).

5. *Platt v. Davies*, 82 Ohio App. 182, 77 N.E. 2d 486, 490 (1947).

tors agree that, absent a specific agreement of the parties to the contrary, the obligation of alimony terminates upon the death of the obligor.[6]

We are persuaded that the general rule is based on sound policy and therefore hold that absent a specific agreement or decree provision to the contrary, the obligation to pay alimony terminates upon the death of the obligor. One leading commentator in this field has observed:

> In most cases the continuance of alimony causes hardship, inconvenience and expense to those closer to the husband than his ex-wife, such as the wife and children of a second marriage. It requires the estate to be held open, perhaps for a long time, and may frustrate the scheme of disposition set up in the husband's will. Although there may be circumstances where alimony ought to continue . . . such cases are rare, and the rule should be that alimony ends on his death unless the decree plainly provides otherwise.

H. Clark, Law of Domestic Relations § 14.9, at 462–63 (1968).

In reaching our decision we find the authorities relied upon by Jean Kuhns are distinguishable. More particularly, in *Welsh v. Welsh,* 346 Mich. 292, 78 N.W.2d 120 (1956), the Michigan Supreme Court held that the death of the husband did not by itself warrant modification or termination of the decedent's obligation in the settlement agreement to pay alimony. There the court relied principally upon its earlier decision was premised on a Michigan stat- 506, 14 N.W.2d 129 (1944). This earlier decsion was premised on a Michigan statute which abrogated the common law rule and specifically authorized alimony payments from an estate. Since Alaska has no comparable statute, the *Welsh* holding is inapposite.[7] In *Storey v. Storey,* 125 Ill. 608, 18 N.E. 329 (1888), the Supreme Court of Illinois held that the divorced wife was entitled to continued alimony payments from the estate of her former husband. Of significance, however, is the fact that the court found in the terms of the settlement agreement an expressed intention on the part of the parties that the successors of the husband were bound by the obligation to pay alimony. Thus, *Storey* is representative of the principle that the parties in a divorce proceeding may undertake by contract to create an obligation to pay alimony binding on the obligor's estate and successors.[8]

6. *Estate of Houston v. Houston,* 521 P.2d 182, 183 (Colo.App.1974) ; *Rauser v. Rauser,* 47 Wis.2d 295, 297, 177 N.W.2d 115, 118 (1970) ; *Schroeder v. Schroeder,* 234 Md. 462, 463, 200 A.2d 42, 43 (1964) ; *Desjardins v. Desjardins,* 308 F.2d 111, 117 (6th Cir. 1967) ; *Warren v. Warren,* 361 P.2d 525, 527 (Wyo.1961) ; *Luce v. Providence Nat'l Bank,* 122 F.Supp. 21, 23 (D.R.I.), *aff'd per curiam* 217 F.2d 648 (1st Cir. 1954) ; *Foster v. Foster,* 195 Va. 102, 77 S.E.2d 471 (1953) ; *Pike v. Pike,* 208 P.2d 380 (Cal.1949) ; and *De Reimer v. Old Nat'l Bank of Spokane,* 60 Wash.2d 686, 374 P.2d 973 (1962). *See also* H. Clark, Law of Domestic Relations § 14.9, at 461–63 (1968) ; W. Nelson, Divorce and Annulment § 17.20, at 94 (2d ed. 1961).

7. *Van Haltern v. Van Haltern,* 351 Mich. 286, 88 N.W.2d 485 (1958), is also cited by appellee. Since the decision in *Van Haltern* relies on *Welsh* and *Braffett,* it too is inapposite for the same reason.

8. In the superior court appellee also relied upon *Stoutland v. Stoutland,* 103 N.W.2d 286 (N.D.1960) ; *Roberts v. Roberts,* 257 Iowa 1, 131 N.W.2d 458 (1964) ; and *Ford v. First Nat'l Bank in St. Petersburg,* 260 So.2d 876 (Fla.1972). These cases are distinguishable upon the grounds that in each the terms of the settlement agreement indicated clearly that the parties had considered the question of death and intended that alimony payments continue beyond the death of the obligor.

Appellee Jean Kuhns also relies on *Goggans v. Osborn,* 16 Alaska 451, 237 F.2d 186, 189 (9th Cir. 1956), a pre-statehood Alaska case involving the enforcement by contempt proceedings of a husband's obligation under a property settlement agreement. In dicta, the court stated, "A decree providing for alimony, whether or not based on a contract, may be modified or terminated upon the death of the husband. . . . " Appellee points to the word "may," arguing the inference that an alimony decree may not be terminated by death

■ This brings us to the second question in this appeal, namely, whether the parties contracted to modify the general common law rule governing alimony.[9] Jean Kuhns urges us to give effect to the "plain meaning" of the language used in paragraph 9 of the property settlement agreement. She argues that since the parties provided that the alimony obligation ceases upon her remarriage, it was necessarily contemplated that no other contingency would terminate the alimony payment obligation.

■ Parallel arguments have largely been rejected by other courts which have construed similar alimony provisions.[10] In the circumstances where the provision in question can be fairly said to be silent with respect to the obligor's death, the courts have been reluctant to construe the provision in a manner which would result in the perpetuation of the obligation to pay alimony. Typical of the decisional law expressing this attitude is *Luce v. Providence Union National Bank,* 122 F.Supp. 21, 23 (D.R.I.), *aff'd* 217 F.2d 648 (1st Cir. 1954):

. . . the well-established rule is that the obligation to make alimony payments ceases upon the death of the

husband unless the decree by its terms expressly and unequivocally provides that the obligation shall continue beyond his death and shall be binding upon his heirs.

In the absence of such unequivocal terms, the burden should be upon the recipient of the alimony to establish the parties' intention that the obligation continue.[11] Study of the entire property settlement agreement convinces us that Jean Kuhns did not sustain her burden of proof. Of principal significance in this regard is the 5th paragraph, which gives to Jean Kuhns ownership and control of the two insurance policies on the life of the decedent carrying a total of $15,000 coverage. This portion of the property settlement agreement evidences that the parties contemplated the eventuality of Howard Kuhns' death and took explicit steps to provide Jean Kuhns with a certain measure of financial security in the event of Howard's death.[12] Presumably had they intended the alimony obligation to afford additional resources after his death, the parties would have made that decision equally explicit. The failure to expressly provide for continuation of alimony payments after death should be viewed as evidence of a contrary intent.[13]

as well. But *Goggans* cited *International Trust Co. v. Liebhardt,* 111 Colo. 208, 139 P.2d 264, 268 (1947), in support of the quoted proposition. In *Liebhardt* the Colorado Supreme Court said that, absent a provision to the contrary, " . . . [t]he duty to support terminates with death, and the right to alimony also ceases. The function of alimony is merely to make provision for the support of the wife during the lifetime of the husband."

9. Resolution of this issue is a question of law, *Day v. A & G Const. Co.,* 528 P.2d 440, 443 (Alaska 1974), which requires application of principles of contract interpretation to the settlement agreement. *Western Airlines, Inc. v. Lathrop Co.,* 535 P.2d 1209 (Alaska 1975).

10. *See, e. g., Estate of Houston v. Houston,* 521 P.2d 182, 183 (Colo.App.1974); H.

Clark, *supra,* note 6, at 462 n. 96 and cases cited therein.

11. The claimant has the burden of proving this intent by "clear, cogent and convincing evidence." (*Compare Hendricks v. Knik Supply, Inc.,* 522 P.2d 543, 547 (Alaska 1974).

12. Paragraph 7 of the *settlement agreement* is further evidence of the parties' contemplation of the contingency of Howard Kuhns' death and is also reflective of explicit measures to insure that the obligation to pay the sum of $21,800 continued "until fully paid."

13. *See Estate of Houston v. Houston,* 521 P.2d 182, 184 (Colo.App.1974); *Ball v. Ball,* 183 Neb. 216, 159 N.W.2d 297, 301 (1968); *Desjardins v. Desjardins,* 308 F.2d 111, 118 (6th Cir. 1962).

We therefore reverse the superior court's judgment in the instant case and remand the matter for further proceedings consistent with this opinion.[14]

CONNOR, J., not participating.

---

14. The division of the parties' accumulated wealth may result in an obligation to make a lump sum payment of money, sometimes denominated "alimony in gross." An award of "alimony in gross" is fundamentally an award of a definite sum of money, analogous to an award of a particular piece of property. *See* 24 Am.Jur.2d, Divorce and Separation § 614 (1966). The obligation to pay "alimony in gross" is a vested right of the beneficiary and is enforceable against the estate of the payor. *Shea v. Shea,* 537 P.2d 417 (Okl. 1975); *Herbert v. Huggins,* 231 Ga. 489, 202 S.E.2d 443 (1973); *Ball v. Ball,* 183 Neb. 216, 159 N.W.2d 297, 300 (1968); *Warren v. Warren,* 361 P.2d 525, 527 (Wyo.1961). It is clear from the agreement in this case that paragraph 9 of the settlement agreement was not intended to create an obligation to pay "alimony in gross" and appellee does not so contend.