THE SANITARY DISTRICT OF CHICAGO

*v.*

JANE S. MARTIN *et al.*

*Opinion filed April 18, 1907—Rehearing denied June 6, 1907.*

1. DRAINAGE—*power of Sanitary District of Chicago to agree to build levee.* Under the law of its organization the Sanitary District of Chicago has power, in compromising a suit to condemn land for use in changing the channel of the DesPlaines river, to agree, in consideration for a deed to the land desired, to build a levee to protect the remaining lands from overflow, although the levee must, if built, cross lands the district does not own, including part of a highway and railroad right of way; and if it has full knowledge of all the facts and accepts the deed and uses the land for a new channel, it cannot lawfully refuse to perform its agreement upon the ground that the expense of building the levee greatly exceeds the value of the land to be protected.

2. SPECIFIC PERFORMANCE—*equity may enforce grantee's agreement contained in the deed.* An agreement whereby the grantee, as a part of the consideration for the deed, is to build a levee to protect the remaining lands of the grantor may be specifically enforced by a court of equity, even though the deed is signed only by the grantor and not by the grantee, and regardless of the question whether the agreement, for that reason, is or is not a covenant.

3. SAME—*when a defendant cannot complain that court assessed damages.* Where a grantee agrees, as a part of the consideration for the deed, to build a levee to protect the remaining lands of the grantor, and enters upon the land and so uses it that he cannot re-

store it to the owner in its original condition but refuses to build the levee, he cannot complain that the court, instead of decreeing specific performance, as sought by the grantor, found in accordance with the defendant's contention that the cost of the work would greatly exceed the damages sustained, and for that reason assessed the complainant's damages in accordance with the evidence.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

At the June term, 1902, of the circuit court of Cook county appellee Jane S. Martin filed her bill against appellant, the Sanitary District of Chicago, in which she alleged that prior to October 8, 1891, she was the owner of lots 3 and 4 of a subdivision of the south-east fractional quarter of section 11, township 38, north, range 12, east of the third principal meridian, in Cook county, Illinois; that on the date aforesaid appellant filed its petition in the county court of Cook county to acquire a portion of said lots by condemnation, together with the riparian rights thereon, and during the pendency of said proceedings, on April 26, 1893, the matter in controversy was settled by a contract and deed to appellant for a consideration of $1400. The clause of said deed in question between the parties in this action is as follows:

"It is understood and agreed by and between the parties hereto, and it is a part of the consideration herein, that the grantee shall erect and continuously maintain a levee from the high ground upon section 14 in said township 38 to the high ground in section 1 in said township, said levee to be north of and parallel to the new river channel which the grantee is about to construct in said township; said levee to be twenty feet wide on the top, with slopes of 1½ to 1 on the outside and 2 to 1 on the inside, the grade to be twenty feet above datum at its lower end and rise with a uniform grade to the Chicago, Santa Fe and California rail-

way, when its elevation is to be twenty-four feet above datum, thence it is to rise to a height of twenty-five feet above datum at its upper end of that side of said levee farthest from the river. Said grantee shall cut and continuously maintain a ditch three feet deep and six feet wide on the bottom, with slopes of 1½ to 1. Said levee and said ditch shall be located wholly on the land of said grantee. It is understood and agreed by and between the parties hereto, and it is a part of the consideration of this deed, that said grantee, its successors and assigns, shall provide and continuously maintain from the time when its main channel shall have been constructed, such outlets or drains from said ditch as will carry all the water from said ditch into the main channel to be constructed by said grantee; this conveyance being made subject to the road or highway rights. Said grantor, in further consideration of the money hereinbefore receipted for, releases all claims for damages to lands not taken by grantee herein for its right of way, growing out of the construction and maintenance of its main channel and the necessary adjuncts thereto."

The bill further alleged that said deed was accepted by appellant and it took possession of the land described therein and now holds such possession, but it did not construct the levee or make the ditches as provided therein but refused to be bound by the terms thereof; that appellee's other lands not conveyed were used for the quarrying of limestone through a large open quarry on the premises, and since the construction of said drainage canal the waters of the DesPlaines river have overflowed said lands and filled said quarry with water, so that business cannot be there carried on. The prayer of the bill was for a decree for the specific performance of the covenants in the deed.

The answer admitted the execution of the deed and contract and the refusal to comply with the covenants therein contained. It alleged that the tract of land owned by appellee lies entirely north and north-easterly from the lands

acquired from her by appellant, and that her tract of land is liable to overflow from the DesPlaines river but not in consequence of the construction and maintenance of the drainage canal; that the DesPlaines river is south of but close to the real estate of appellee and lies between the main channel of the canal and the lands of appellee; that said lands now are and always have been of little value; that if it were possible for appellant to carry out the covenants in said deed the cost of such levee or drain would exceed the sum of $35,000 and would probably reach as high as $40,-000; that in order to construct said drain it would be necessary to tunnel under the bed of the DesPlaines river and construct the same across the lands of private individuals and across the right of way of the Chicago, Santa Fe and California Railway Company. It further averred that upon the showing thus made it would not be just or equitable to compel the expenditure of such a large sum of money to benefit a tract of land which, after the improvement, would have but small proportional value with the cost of the work. It denied that it had any power to condemn land which it does not own in order to construct such levee and ditch, and claims generally that the appellee is not entitled to the relief prayed.

A general replication was filed to the answer, and on December 14, 1904, appellee Susan O'Connell filed a supplemental bill, in which she alleged that on May 14, 1903, appellee Martin, for a consideration of $20,000, conveyed the real estate in controversy to her, and by reason of such conveyance she became entitled to the benefits of the agreement and covenants in said deed and therefore entitled to the specific performance thereof, as prayed in appellee Martin's original bill.

Appellant answered the supplemental bill, denying the conveyance by Martin and claiming that the transfer was colorable only, and done for the purpose of fixing a higher price upon the lands in question; denying that the cove-

nants run with the land and setting up substantially the same averments as the original answer, and alleging that O'Connell had notice, at the time of her alleged purchase, of the appellant's inability to comply with the contract, and hence she was not entitled to the relief.

Upon a hearing before the court a decree was rendered finding the allegations of the bill to be substantially true, and that at the time of the execution of said contract and deed the damages were in contemplation by the parties to the agreement; that defendant deemed it necessary, in the construction of its main channel, to change and straighten the bed of the DesPlaines river and to construct a new channel, and having so determined it entered into the contract or agreement contained in said deed; that the appellant has taken that portion of appellee Martin's property described in the deed and constructed the new channel of the river through the same, and it is therefore in no position to restore said appellee to the status which existed prior to the deed; that appellant is estopped from setting up the defense of *ultra vires* as a reason for not carrying out the work specified in the contract; that by reason of the great cost to the appellant, which the court found to be about $60,000, in order to specifically perform said contract, when compared with the loss occasioned by reason of the failure to so perform, it would be unequitable and a great hardship to decree specific performance; that the covenant contained in said deed runs with the land; that by reason of the failure to construct said levee, ditch and outlet eight acres of land have been damaged and decreased in their market value in the total sum of $5600, with interest from January 14, 1902, at five per cent, which amount is ordered to be paid to the appellees as their interests may appear. To reverse this decree an appeal has been prosecuted to this court.

E. C. LINDLEY, (P. C. HALEY, of counsel,) for appellant.

TENNEY, COFFEEN, HARDING & WILKERSON, JOHN E. WATERS, and CHARLES C. GILBERT, for appellees.

Mr. JUSTICE WILKIN delivered the opinion of the court:

It is first insisted by appellant as a ground of reversal that the language of the deed does not constitute a covenant, for the reason that it is signed by but one of the parties,— in other words, that a covenant cannot be created by a deed poll executed by the grantor alone. There seems to be a conflict in the authorities on this proposition. In the American and English Encyclopedia of Law (vol. 8, p. 64,) it is held, as a general rule, that a promise, in order to be binding as a covenant, must be under the seal of the party by whom it is to be performed. But in New York and New Jersey a different rule prevails, and it has been there held that if an estate is conveyed by deed *inter partes* containing covenants to be performed by the grantee, and he accepts the estate, the deed, though only signed and sealed by the grantor, will be deemed the deed of both parties, and the grantee will be as effectually bound by the covenants as though he had executed the instrument. (*Bowen* v. *Beck,* 94 N. Y. 86; 46 Am. Rep. 124; *Hagerty* v. *Lee,* 54 N. J. L. 580.) As we view the case it is not necessary to determine whether the instrument is, strictly speaking, a covenant or not, for it was at least a valid contract between the parties, which a court of equity might specifically enforce. The appellant is a corporation created by the statute for the purpose of building a drainage canal, and is fully vested with all power and authority necessary to accomplish the duties of its creation. It may sue and be sued, and enter into all kinds of contracts and obligations reasonably necessary to accomplish the desired end. It is also vested with the power of eminent domain, and may condemn such property as may be needed for its right of way and other incidents attending the same. In pursuance of these corporation powers it began the proceedings mentioned in the bill to acquire land

for its drainage canal. It was deemed necessary by it to straighten a portion of the DesPlaines river, and in order to do so it sought to condemn some of the lands of appellee Martin. Accordingly, the condemnation proceeding was commenced in the county court of Cook county. To avoid a protracted litigation a compromise was effected between the parties, as alleged in the bill and admitted by the answer. In making such compromise certain facts were taken into consideration and certain agreements entered into. The agreement with reference to the erection of the levees and ditches was contained in the deed of conveyance from appellee Martin to appellant. This formed a part of the consideration for the transfer and was for the protection of the grantor in the deed. The deed thus executed was accepted and became a valid contract between the parties, and appellant took possession of the land burdened with the provisions of this contract. The land was subsequently used as a part of the bed of the river, and therefore appellant, at the present time, is unable to return it to said appellee. After a complete fulfillment of the contract on the part of said appellee and the performance of all of her duties and obligations, appellant refused to comply with its terms of the agreement. As a result of such refusal and failure to carry out its contract the remaining lands of said appellee were flooded with water and she sustained damages. Being unable to obtain her rights from appellant she was compelled to resort to a court of equity, and under the circumstances equity and good conscience require that she should be given relief.

It is next urged that even though the provisions of the deed for the construction of the embankment and levee do constitute a covenant, still it would not be within the power of appellant to perform or carry out the work demanded, for the reason that the high lands in sections 1 and 11 were not owned or controlled by either appellant or appellee Martin, and the work required the use and occupation of a public

highway and a part of the right of way of the Santa Fe railroad, and the appellant had no authority to condemn this private property or otherwise acquire it. Section 23 of the Sanitary District act (Hurd's Stat. 1905, p. 365,) provides that the commissioners shall have full power and authority to enlarge or in any way change the channel of the DesPlaines river if it be necessary in order to properly construct the drainage canal. Section 8 of the same act provides that the sanitary district may acquire, by purchase, condemnation or otherwise, any real and personal property, right of way and privilege, either within or without its corporate limits, which may be required for its corporate purposes. When the commissioners began to construct the canal they found it would be necessary to straighten a part of the course of the river at this particular point, and for that reason they sought to acquire appellee Martin's land. If, in order to take a part of the land, it was necessary to condemn other lands in order to build ditches or levees to protect the portion which remained, the statute was broad enough to meet such contingencies, and the commissioners might have acquired such other land by condemnation, if necessary. All of these facts were known at the time the deed was made and accepted, and it is apparent that these points were considered at that time. If, afterwards, circumstances so changed that it would not be equitable to require a compliance with the provisions a different question would arise, but we do not see how it can be successfully contended that the commissioners were without authority to condemn adjacent lands·if it was necessary to do so in order to properly build the canal.

It is insisted that the condition in the deed was not one which a court of equity would specifically enforce, for the reason that the value of the land affected by the overflow, and which it was the purpose to protect by the levee, was in no way in proportion to the cost of the work, and a court of equity will not grant specific performance where equity and

good conscience demand that it should not be so decreed. It is no doubt the law that specific performance of an agreement is not a matter of right which the parties may demand at will, but lies peculiarly within the sound discretion of a court of equity, to be enforced or not, as the court may see fit in view of all the facts and circumstances of each particular case. But these rights are not to be refused or granted arbitrarily, but rather according to well established rule. We cannot say that the court has abused this sound discretion. At the time of the execution of the deed appellant was aware of the situation of appellee Martin's land; at least there is nothing in the record to show the contrary. It knew what would be necessary to do in order to comply with the provisions of the deed. Knowing these facts, it proceeded to make the contract. It certainly would be inequitable to refuse said appellee the benefit of her relief in equity and require her to take her chances in an action at law. Appellant claims in its answer that the cost of the levee and ditch would be so much in excess of the benefit that it would be unjust and inequitable to require specific performance. The court accepted this view of the case, as it had a right to do, and sought to ascertain the damages in dollars and cents. (*Phillips* v. *Thompson,* 1 Johns. Ch. 133; *Cushman* v. *Bonfield,* 139 Ill. 219; 2 Sutherland on Damages, 590; 26 Am. & Eng. Ency. of Law,—2d ed.—85; Story's Eq. Jur. 798.) Instead of complaining of the remedy applied by the court to a breach of its own contract and duty, appellant should be satisfied that the court did not see fit to decree a specific performance of the exact terms of the agreement.

But it is claimed by appellant that even though this is the proper view to be taken of the case, the damages are excessive and not sustained by the evidence. The court found that eight acres of land had been damaged to the extent of $700 per acre, and that appellees were entitled to interest on this amount at the rate of five per cent per annum

from January 14, 1902. There is a sharp conflict as to how much of the land is subject to overflow, and whether this overflow is caused in any way by the change in the river and the building of the canal. There is also a sharp conflict in the evidence as to the value of the land, the purposes for which it may be used and the amount which it is damaged. It is impossible to reconcile this evidence. We think, however, there is ample evidence to support the amount fixed by the court and are not disposed to disturb the decree on that ground.

It is also contended that before the bill was filed appellee Martin knew that appellant was unable to comply with the requirements of the deed; that the covenants therein named did not run with the land, and appellee O'Connell is not entitled to the relief for that reason, and for the further reason that the sale to her was merely colorable and made for the purpose of giving to the land a fictitious value. Appellee O'Connell entered her appearance and filed a supplemental bill, in which she set up her interest. The bill seems to have been prosecuted by both her and Mrs. Martin jointly. The suit was in equity to enforce a valid contract, and all parties interested were parties to the suit. The claim that the transfer was merely colorable and for the purpose of showing an unnatural value is immaterial, as the evidence shows that the damages were not assessed on this value but upon the other evidence in the case. All of the rights of the appellant will be preserved by the payment of the damages assessed, as the decree required that the payment to Mrs. O'Connell should be with the consent of Mrs. Martin.

We find no reversible error, and the decree will be affirmed.

*Decree affirmed.*

Mr. JUSTICE CARTER, having been attorney for the sanitary district when the deed here involved was made, took no part in the consideration of this case.