WILLIAM J. DRUECKER, Appellant, *vs.* GEORGE D. Mc-
LAUGHLIN *et·al.* Appellees.

*Opinion filed June 18, 1908—Rehearing denied October 8, 1908.*

1. DEEDS—*deed need not be signed by grantee to make its cove-
nants binding upon him.* A grantee who accepts a deed containing
a covenant imposing duties upon him is bound by such covenant,
notwithstanding he has not signed and sealed the deed.

. 2. SAME—*what provision is a covenant and not a condition sub-
sequent.* A provision in a warranty deed to a strip of land abutting
upon a block laid out into lots by the grantor, which recites that
the deed is upon the express condition that the grantee shall keep
the premises open as a private way for the benefit of purchasers of
the lots "forever, or until the same shall be taken or condemned"
for a street, is a covenant and not a condition subsequent, and the
grantor's heirs cannot declare a forfeiture when the grantee appro-
priates to his own use a portion of the strip which was not taken
when such street was established by condemnation.

APPEAL from the Circuit Court of Cook county; the
Hon. G. A. CARPENTER, Judge, presiding.

This is a bill in chancery filed in the circuit court of
Cook county by George D. McLaughlin, against Frederick
McLaughlin, for partition of certain lands situated in Cook
county, Illinois. William J. Druecker and Agnes M. Wit-
zel, children and only heirs of John Druecker, deceased,
were made parties defendant, and as to them the bill sought
to remove whatever claim they might have under and by
virtue of a certain deed made by their father to George D.
McLaughlin, as a cloud upon the title of McLaughlin. Wil-
liam J. Druecker and his sister, Agnes M. Witzel, answered
the bill, and William J. Druecker filed a cross-bill making
the complainant and all other. defendants to the original
bill parties defendant, in which he sought to establish a fee
simple title in himself and his sister .to the premises in ques-
tion. George D. and Frederick McLaughlin each filed gen-
eral demurrers to the cross-bill, which were sustained, and
the cross-complainant electing to stand by his bill, the same

was dismissed. William J. Druecker thereupon perfected an appeal to this court, and assigns as error the ruling of the court in sustaining the demurrer to the cross-bill and dismissing the same.

The question involved arises out of the following facts: Prior to 1891 John Druecker was the owner of a block of land known as block 2 in Gardner & Knoke's subdivision, bounded on the west by North Halsted street and on the east by North Clark street. Owing to the fact that North Clark street at this point ran from north-west to south-east, the north line of lot 2 was only about two-thirds the length of the south line. On the 16th of April, 1891, John Druecker executed a plat of block 2, known as Hussander's subdivision out of block 2 of Gardner & Knoke's subdivision, excepting one hundred feet on the north side and fifty feet on the south side, each of the excepted strips extending from Halsted on the west to North Clark street on the east. The plat was duly recorded on April 17, 1891, and is as follows:

On April 27, 1891, John Druecker conveyed lots 1 to 14, inclusive, to various persons. These deeds were all ac-

knowledged on the same day. On the day that they were executed John Druecker executed to Arthur F. Hussander a deed to the south fifty feet, commencing at Halsted street on the west and running east to the west line of the strip marked "alley" on the plat, being the south fifty feet upon which lots 7 to 14, inclusive, abut. This deed to Hussander was made upon a trust which is declared in said deed, as follows: "And in trust further, that in the event said property hereby conveyed, or any portion thereof, is condemned or sold for a public street or alley, to receive the compensation therefor and pay over the same to the persons who are now owners of said lots one (1) to fourteen (14), inclusive, in Hussander's subdivision aforesaid, giving to the said owners for each lot one-fourteenth of the net proceeds of said property after paying the expenses of this trust, including all taxes and assessments that may be levied thereon and paid by said second party as trustee, aforesaid."

On April 28, 1891, John Druecker and wife, in consideration of $30,000, conveyed by general warranty deed lots 15 to 22, inclusive, to George D. McLaughlin. It will be seen by reference to the plat that these lots abut on North Clark street on the east and on an alley on the west. On the same day that this deed was made to McLaughlin, in consideration of $10, he conveyed to said McLaughlin that portion of the south fifty feet that is adjacent to and south of lot 15, extending from North Clark street west to the east line of the alley. This deed was a general warranty deed, which contained the following clause: "This conveyance is made, however, upon the express condition that said grantee and his assigns shall keep the said premises open as a private way for access to and egress from all the lots in Hussander's subdivision aforesaid, for the use of the owners and occupants thereof, and for no other persons, forever, or until the same shall be taken or condemned by the proper authorities for a public street." This deed embraces the land in controversy in this suit, and the sole

235 — 24

question involved is whether the above clause should be construed as a condition subsequent or as a covenant. It will be observed that Druecker still retained title to a small piece of the south fifty feet, which is 20.73 feet wide, which is designated on the plat by the small, oblong piece, marked "Tract retained by Druecker." In 1893 Druecker conveyed this remaining piece to George D. McLaughlin by general warranty deed, for the consideration of $500, which was the full value of the land conveyed. There was no condition or limitation in this deed.

It will be observed that while it seems to have been contemplated by John Druecker that a street or passageway would necessarily be maintained between Halsted and North Clark streets, both on the north and south sides of his subdivision, no street or passageway was dedicated by the plat on either side to the public. In 1891 the city of Chicago instituted a condemnation proceeding for the purpose of condemning for a public street the south fifty feet, extending from North Clark street to Halsted street. The attempt at that time was to extend Oakdale avenue in a direct line from Clark street to Halsted, Oakdale avenue having been prior to that time opened east of Clark street and west of Halsted. This condemnation proceeding was defeated through the opposition of McLaughlin. Subsequently two other attempts to condemn the same strip of land resulted the same way. In August, 1899, a fourth condemnation proceeding was instituted by the city for the purpose of condemning the north half of the south fifty-foot strip and twenty-five feet off of the south side of the platted lots. This condemnation proceeding embraced all of lots 7 and 15 and twenty-five feet off of the south end of lots 8 to 14, inclusive. This proceeding was successful, and Oakdale avenue was extended from North Clark to Halsted street of the width of fifty feet, and has been opened and used as a public street for the last four years. The effect of this condemnation proceeding was to make

a jog in Oakdale avenue of twenty-five feet to the north. The avenue as established by this condemnation is not shown on the plat, but it is easy to outline it by taking a straight line in the center of the south fifty feet from Halsted to Clark for the southern boundary, and extending the north boundary of lot 15 west until it intersects the north boundary of lot 7 for the north boundary of the avenue. When Oakdale avenue was thus extended through, it afforded a complete and satisfactory outlet on the south for all of the lots in the subdivision. The condemnation money arising from the condemnation of the north half of the fifty-foot strip was paid to the owners of the several lots abutting or facing on said fifty-foot strip on the south. Four thousand dollars was paid to George D. McLaughlin for the twenty-five feet of this strip taken immediately south of lot 15, and the money for the remainder of the strip condemned was paid to the owners of the lots, respectively, entitled thereto. After the opening of Oakdale avenue in pursuance of this condemnation proceeding George D. McLaughlin proceeded to appropriate to his own private use the south half of that portion of the south fifty feet south of lot 15 which was not embraced in the condemnation proceeding. A sidewalk was built along the north boundary of this twenty-five feet, and other acts were performed clearly evincing an intention on the part of said McLaughlin not to maintain the south twenty-five feet open as a private way, according to the requirements of the clause in the deed above set out. After these acts were committed by George D. McLaughlin, William J. Druecker and his sister, Agnes M. Witzel, children and only surviving heirs of John Druecker, who died in 1906, relying upon the clause in the deed above set out as a condition subsequent, declared a forfeiture, and by the cross-bill filed herein seek to have their title established in fee.

McLaughlin contends (1) that the clause in the deed in question should be construed as a covenant; and (2) if the

clause creates a condition subsequent, it is void (*a*) as being repugnant to the fee simple estate granted; (*b*) such condition is void, as being unreasonable; and (*c*) the condition, if any there be, has been rendered impossible of performance both by the voluntary act of the grantor and the act of the law.

HENRY L. PRESCOTT, (ALBERT M. KALES, of counsel,) for appellant.

M. PAUL NOYES, for appellees.

Mr. JUSTICE VICKERS delivered the opinion of the court:

We have been saved much labor by the able and exhaustive briefs of counsel. They have each accurately located the pivotal question involved and concentrated their argument upon it.

Chancellor Kent says: "If it be doubtful whether a clause in a deed be a covenant or a condition the courts will incline against the latter construction, for a covenant is far preferable to the tenant." (4 Kent's Com. p. 132.) This rule is recognized in our State. (*Gallaher* v. *Herbert,* 117 Ill. 160.) The intention of the party to the instrument, when clearly ascertained, is of controlling efficacy, though conditions and limitations are not readily to be raised by mere argument. The question is one not depending so much upon artificial rules of construction as upon the application of good sense and sound equity to the object and spirit of the contract. (*Post* v. *Weil,* 115 N. Y. 361; 5 L. R. A. 422.) The absence of a re-entry clause, while not indispensable, is always important as evidence of an intention to impose a condition subsequent. Such a clause may make certain that which in its absence is left open to construction. (*Koch* v. *Streuter,* 232 Ill. 594.) The intention is to be determined from the language employed, when read in the light of the context of the instrument and such surrounding circumstances as will aid the court in ar-

riving at the true intent and meaning of the parties. Thus read, to our minds it is perfectly apparent John Druecker never contemplated a reversion of this title to him in case the strip of land in question should not be kept open for a private way. The reasonable explanation of Druecker's action is found in the natural desire that he had to facilitate the sale and enhance the value of the lots in this subdivision. He did not dedicate any streets on either side of the subdivision, although it was clearly necessary that streets should be both on the north and the south. If he had dedicated the streets the lot owners could receive nothing from condemnation proceedings. By the method he adopted he received all the advantages of a sale of lots opening upon a public outlet, and at the same time it was provided by the creation of a trust as to one part of the lots and by the conveyance in question as to the others, that the purchasers of lots would receive an equitable share in the condemnation money arising from the opening of a street. The subsequent events confirm the business shrewdness of his scheme. All the persons to whom Druecker sold lots in this subdivision received their *pro rata* share of the damages awarded in the condemnation proceeding and at the same time have Oakdale avenue located and opened where it is most beneficial to their respective lots. John Druecker could have no possible interest in keeping the strip of land in question open as a private way after he had sold all of the lots he owned in this subdivision. The clause in question was clearly inserted in the deed for the benefit of the owners and occupants of lots in Hussander's subdivision. It is not necessary to determine in this proceeding whether there is any easement or servitude imposed on the land in question by virtue of the grant and covenant which might be enforcible by the owners and occupants of the lots for the benefit of which the limitation in question was made, since none of such owners or occupants are here asking any relief. We think that the clause under consideration is a

covenant made for the benefit of the owners and occupants of the lots in this subdivision, and that cross-complainants have no interest whatever in the premises.

Appellant's contention that in order to create a covenant obligatory upon the grantee in a deed it is necessary that the grantee should sign and seal the instrument is not the law in this State. (*Sanitary District* v. *Martin,* 227 Ill. 260.) A grantee who accepts a deed with a covenant imposing duties upon him is as much bound by such covenant as though he had signed and sealed the deed.

Cross-complainants have no interest in the land in question, and the court properly sustained the demurrers to their cross-bill.

The decree of the circuit court of Cook county will be affirmed.

*Decree affirmed.*