WILLIAM A. GEITHMAN *et al.* Appellees, *vs.* ALFRED EICH-LER *et al.* Appellants.

*Opinion filed December 16, 1914.*

1. SPECIFIC PERFORMANCE—*what is meant by a "merchantable abstract of title."* A contract for the sale of land which requires the owner to convey the land "in fee simple, clear of all encumbrances whatever, by good and sufficient warranty deed," the title to be shown by a certain date and at a later date the owner to deliver to the purchaser "a warranty deed and good merchantable abstract of title," calls for an abstract of title showing a good merchantable title and not merely a merchantable abstract.

2. SAME—*when refusal to accept a deed and abstract is not a ground for forfeiture.* Where the owner of land has agreed to convey the same in fee simple, free from all encumbrances, and to furnish an abstract showing a good merchantable title, he is not required to furnish an abstract showing a perfect title of record, but if the abstract furnished by him does not show a connected title of record and is not supplemented by affidavits or proof supplying the facts necessary to show a good merchantable title, a refusal to accept the abstract, and the deed tendered therewith, does not justify the owner in declaring the contract forfeited.

3. SAME—*what constitutes a valid objection to abstract of title.* Where the abstract of title shows a certificate of the purchase of the lands from the State by Noah C. Anderson but no patent of record, and the next conveyance of record is from Noah C. Amsden as grantor, the fact that there is no conveyance shown from Anderson to Amsden is a valid objection to the abstract of title, in the absence of anything showing identity of parties or possession of the land, who had been in possession or how long they had been in possession.

APPEAL from the Circuit Court of DeKalb county; the Hon. CLINTON F. IRWIN, Judge, presiding.

R. K. WELSH, for appellants.

GEORGE W. BROWN, and C. D. ROGERS, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

This is a bill filed by appellees for the specific performance of a contract to convey land. September 21, 1912, Alfred Eichler and May Eichler, appellants, entered into a contract with William A. Geithman and James J. Hammond, appellees, whereby appellants, as parties of the first part, agreed to sell, and appellees, as parties of the second part, agreed to buy, a certain 120 acres of land situate in DeKalb county. The contract provided the grantors were to convey the land "in fee simple, clear of all encumbrances whatever, by good and sufficient warranty deed," the "title to be shown by October 15, 1912, showing title in Alfred Eichler," and that on March 1, 1913, the appellants agreed "to deliver to party of second part [appellees] a warranty deed and good merchantable abstract of title" to the land described in the contract, at which time the negotiations were to be completed. Five hundred dollars was paid on the date of the execution of the contract, to be applied on the purchase price, $4640 was to be paid March 1, 1913, and a note given for the balance, $12,500, secured by mortgage on the land. The contract provided that upon failure of appellees to make subsequent payments therein provided or otherwise perform their covenants, appellants might forfeit and determine the contract and retain any payments made, as liquidated damages. Time was made the essence of the contract. It appears, however, that the time or dates mentioned in the agreement were waived by mutual consent and negotiations were had toward the completion of this agreement much later than March 1, 1913, the time fixed by the contract for the completion of the sale. It appears that appellants showed appellees the abstract to.the land in question January 31, 1913, and on February 14,

1913, the abstract, brought down to date, was delivered to appellees and by them submitted to their attorney for examination. On February 22, 1913, he delivered his written opinion of the abstract to both appellants and appellees, pointing out certain defects, none of which are necessary to be considered except one, which will be later referred to. February 28, 1913, appellees deposited, at the place and with the parties designated in the contract, the balance of the consideration for the land to be paid in cash and a note secured by mortgage, in accordance with the terms of the contract. Several conferences were subsequently had between the parties with a view to concluding the transaction, and appellants on March 17, 1913, met appellees by appointment, to complete the transaction. Appellants had executed a deed and assigned a lease on the premises, which, together with the abstract and tax receipt, they had with them. Appellees objected and refused to carry out the contract, claiming the title was not in compliance with the agreement. March 27, 1913, appellants left at the place designated for the performance of the contract, the deed, assigned lease, abstract and tax receipt, and on the following day served written notice upon appellees that unless the contract was completed and full payment made on or before April 8, 1913, the contract would be forfeited and determined. Some further negotiations were had between the parties, but the contract not being completed on April 8, 1913, appellants on April 19, 1913, served a notice of forfeiture on appellees. Subsequent to the latter date the original contract for the sale of the land was recorded by appellees, and on May 6, 1913, they filed their bill in chancery praying for the specific performance of the contract in question and for an injunction restraining appellants from receiving the rents of the land involved, and for general relief. Appellants filed an answer denying appellees were entitled to the relief prayed and insisting the forfeiture was valid, and filed a cross-bill alleging the title ten-

dered to appellees complied with the terms of the contract and praying that the contract now of record be canceled as a cloud upon appellants' title. Upon answer to the cross-bill and replications being filed, a hearing was had and a decree entered dismissing the cross-bill and granting the relief prayed in the original bill.

Few, if any, important facts are in dispute. The questions presented for decision are mainly questions of law arising out of the construction of the contract sought to be enforced.

Appellants contend that the contract bound them to convey to appellees, by warranty deed free from encumbrances, a fee simple title to the land but not to furnish an abstract showing such title in them of record; that the appellants owned the title they agreed to convey, and when they executed the deed and delivered it to the parties and at the place agreed upon, for appellees, together with the abstract, they had done all that was required of them by the contract, without regard to whether the abstract showed good merchantable title in appellants. In other words, the contention of appellants as to the abstract they were required to furnish is, that it was to be a merchantable abstract but not that it was to show a merchantable title in appellants. Appellants further contend that even if the contract is construed as requiring them to furnish an abstract showing a merchantable title, the abstract furnished does show in appellants a merchantable title. While other defects in the abstract were claimed to have existed, the only one relied upon by appellees for their refusal to accept the deed and abstract tendered them is as follows: The records show, as abstracted, that eighty acres of the land were purchased by Noah C. Anderson from the State and a certificate issued to him therefor, but no patent was of record. The certificate of purchase by Anderson is dated March 9, 1846, and on June 24, 1846, Noah C. Amsden conveyed the land to Caleb Olmstead. No conveyance is shown from Noah

C. Anderson to Noah C. Amsden. As a matter of fact, the land was purchased from the State by Noah C. Amsden and the name "Anderson" was written in the certificate by mistake, which was shown by appellants on the trial of the case by a certified copy by the Auditor of Public Accounts of the report of the sale of school lands in DeKalb county and also a certified copy of the patent issued, but this was not known to appellees until the documents were offered in evidence at the trial.

As we construe the agreement, appellants were bound not only to convey to appellees, by warranty deed, a good title free from encumbrances, but they were required to show by October 15, 1912, that they owned such title, and by March 1, 1913, at which time the sale was to be completed, they were to furnish appellees an abstract showing merchantable title in them. It is true the contract is not in those precise words. It obligated appellants to convey a fee simple title free from encumbrances, by warranty deed. This did not necessarily mean a perfect title of record but meant a good merchantable title. A party may have such title to land notwithstanding apparent defects in the chain are shown by the records. For instance, the Statute of Limitations may make a title good which is apparently defective as shown by the chain abstracted from the records. There is no dispute upon these propositions and the citation of authorities we deem unnecessary. The contract further bound appellants to show appellees by October 15, 1912, that they had the title which they agreed to convey, but how this is to be shown is not expressly stated in the contract. The transaction was to be completed March 1, 1913, by the payment by appellees of the balance of the cash payment and by securing the remainder of the purchase money by a mortgage on the land, at which time appellants agreed to deliver to appellees "a warranty deed and good merchantable abstract of title of the above described land." Appellants' agreement required them to convey to appellees

a good and merchantable title, and it seems clear to us the intention of the parties was, from the language used, that the abstract should show they owned and were able to convey the kind of a title they had agreed to convey to appellees. It does not appear to us a reasonable construction of the contract to say it was intended by the parties that the abstract should be a merchantable one, simply,—that is, an abstract showing matters of record affecting the title, made by a person, firm or corporation engaged in the business of making abstracts, in such form as is customary in making abstracts, as to pass current among persons buying and selling real estate and examining titles. (*Harper* v. *Tidholm,* 155 Ill. 370; *Heinsen* v. *Lamb,* 117 id. 549.) It was not a merchantable abstract appellees were buying but a merchantable title to the land, and the requirement that appellants were to furnish a "good merchantable abstract of title" to the land was intended to, and does, mean that they were to furnish an abstract showing they had the kind of title they agreed to convey. There is some testimony in the record which in our opinion tends to show that this was the construction placed upon the contract by the parties themselves. After the report made by the attorney for appellees upon the abstract of title the parties met at the Exchange Bank of Brown & Brown, at Genoa, March 17, 1913, and talked about a modification of the contract by dividing the deferred payment on the land into three installments,—one for $5500, one for $4000 and one for $3000,—for which notes were to be given, the deal completed and appellants allowed until March 1, 1914, to furnish the abstract agreed to in the contract, the $3000 note to be left with Brown & Brown as security for the performance of the agreement, and if appellants failed to procure the abstract within that time, then appellees might procure it before March 1, 1915, and deduct the cost of doing so from the note. Appellant Alfred Eichler reduced this proposition to writing, and it was introduced in evi-

dence upon the trial but was never fully agreed to and signed by the parties. In the written memorandum prepared by appellant Alfred Eichler the abstract to be furnished by March 1, 1914, is spoken of as "a merchantable abstract of title," but he claimed then, and now insists, that the abstract furnished by him before that time was a merchantable abstract and was a compliance with the agreement. As we understand it, no changes, alterations or additions have been made since that time in the abstract. If he understood the contract to mean simply that he was to furnish a merchantable abstract, it is difficult to understand why he would talk about taking a year's further time in which to procure it, and, if he failed to do so within that time, giving appellees a further year to procure it, with the right to deduct from the $3000 note put up with the bank as security for furnishing the abstract, the costs appellees might incur in procuring it themselves. The intention of the parties is the important question, and this is to be determined from a consideration of the whole instrument. "The intention is to be determined from the language employed, when read in the light of the context of the instrument and such surrounding circumstances as will aid the court in arriving at the true intent and meaning of the parties." (*Druecker* v. *McLaughlin*, 235 Ill. 367; *Goodwillie Co.* v. *Commonwealth Electric Co.* 241 id. 42.) It is also allowable to look to the interpretation the parties themselves have placed upon the agreement, for assistance in determining its true meaning. *Storey* v. *Storey*, 125 Ill. 608; *Vermont Street M. E. Church* v. *Brose*, 104 id. 206.

Our conclusion is appellants were required by their agreement to furnish appellees an abstract showing a good merchantable title to the land in appellants. It remains to be determined whether they did so.

The land was granted to the State of Illinois by the United States, and we have above pointed out that the abstract showed the sale of the land by the State to Noah C.

Anderson but showed no conveyance from him to anyone. The next conveyance from that of the State to Noah C. Anderson in March, 1846, was by Noah C. Amsden in June of the same year. Conceding the correctness of appellants' position that the title may be good without appearing to be so from the record and that the contract to convey a good merchantable title does not mean a perfect title of record, we are still of the opinion it was the duty of appellants to furnish an abstract showing in them a good merchantable title and that they failed so to do.

There is abundant authority that a title may be deemed good although there may be a possibility of a defect; that a defect in title which will excuse the performance of a contract for the purchase of land must be sufficient to cast a cloud on the title and render it suspicious in the minds of reasonable men; that a defect which is a mere possibility but a very remote or improbable contingency, which, according to ordinary experience, has no probable basis, does not show a bad or unmarketable title, but the doubt must be considerable and rational,—such as ought to induce a prudent man to pause and hesitate. (*Attebery* v. *Blair,* 244 Ill. 363; *Gibson* v. *Brown,* 214 id. 330; *Kimball* v. *Tooke,* 70 id. 553; *First African M. E. Church* v. *Brown,* 147 Mass. 296; 17 N. E. Rep. 549; *Cambelling* v. *Purton,* 125 N. Y. 610; *Gill* v. *Wells,* 59 Md. 492.) Was the defect objected to sufficient to cast a cloud on the title?

It does not appear from the abstract that Noah C. Amsden ever acquired title by a conveyance of any character. So far as shown, the State conveyed the title to Noah C. Anderson and no conveyance from him to anyone was shown, nor was it shown that Amsden, as heir or in any other capacity, acquired title from Anderson. One of the things not shown by the records which may make an otherwise apparently defective title good is adverse possession, and it is insisted that Amsden, and those claiming title

through him, had been in the exclusive possession of the land, claiming to own it, much more than twenty years. In *Attebery* v. *Blair, supra,* the land owners contracted to convey the coal under certain lands in fee simple, by good and sufficient warranty deeds, and to furnish the purchaser abstracts showing in them such title. The abstracts did not show a perfect record title but they were supplemented with proofs in the form of affidavits, and the abstracts, in connection with the proofs, showed good title, and this was held to be a compliance with the agreement of the land owners. The court said: "In this case Blair was not bound to accept a title resting merely upon adverse possession under the Statute of Limitations, but the essence of the contract was that he should have conveyances giving him a good title free and clear from encumbrances and that such a title should be shown by the abstracts. It was not implied that the abstracts should show matters not of record or all the facts and circumstances connected with the conveyances which might affect the title, such as possession, who were the legal heirs of a deceased owner where administration was not had within the jurisdiction, and matters of that kind. An abstract of title is, in a legal sense, a summary or epitome of the facts relied on as evidence of title, and it must contain a note of all conveyances, transfers or other facts relied on as evidences of the claimant's title, together with all such facts appearing of record as may impair the title. (*Heinsen* v. *Lamb,* 117 Ill. 549.) It should contain a full summary of all grants, conveyances, wills, and all records and judicial proceedings whereby the title is in any way affected, and all encumbrances and liens of record, and show whether they have been released or not. If complainant furnished abstracts which, in connection with the rules of law applicable to the conveyances and with evidence of facts and circumstances explanatory of the records, showed good title in themselves free of all encumbrances, they fulfilled their obligations."

In the case before us, however, the abstract was not supplemented with proof as to who had been in possession and how long they had been in such possession. Under these conditions we think the abstract did not comply with appellants' obligation to furnish an abstract showing in them a good title. Until the appellants had complied with their agreement they could not put appellees in default and declare a forfeiture.

The decree of the circuit court is affirmed.

*Decree affirmed.*