## CLARKE v. AIKEN et al.

(Circuit Court of Appeals, Fifth Circuit. October 25, 1921.)

No. 3601.

1. **Specific performance ⬤⟿8, 16—Granting discretionary.**

 A court of equity exercises a discretion in determining whether the relief of specific performance should be granted or withheld, and the relief may be withheld when the granting of it may produce hardship or injustice to either of the parties.

2. **Specific performance ⬤⟿16—Landowner held not entitled to specific performance of contract to provide canals across railroad.**

 Where landowner conveyed land to railroad for right of way, in consideration of an agreement to provide and maintain openings through embankment, so as to permit passage of water to be used in cultivation of rice, and it was found unprofitable to raise rice on the land, and the damage to the land in value for failure to provide passageways for water is only $400, the landowner is not entitled to specific performance, where it would cost the railroad in excess of $3,000 to construct such passageways.

3. **Railroads ⬤⟿72(9)—Measure of damages for breach of contract for water openings in embankment stated.**

 Where landowner conveyed land to railroad for right of way, in consideration of an agreement on the part of the railroad to maintain openings through any embankment constructed to insure the flow of water required in cultivation of rice, and cultivation of rice was abandoned for 20 years, and passageways through embankment were filled up, the landowner, in an action for damages, was not entitled to the cost of reconstructing the passageways, but only to the difference in the value of the land with the passageways and without them, where such difference was only $400 and the cost of reconstructing the passageways would be in excess of $3,000.

Appeal from the District Court of the United States for the Southern District of Georgia; Beverly D. Evans, Judge.

Suit in equity by David Loewenthal against the Georgia Coast & Piedmont Railroad Company, in which F. D. Aiken and others were named as receivers, John D. Clarke intervened, and the Columbia Trust Company filed a cross-bill against the Georgia Coast & Piedmont Railroad Company. From an adverse decree (265 Fed. 961), the intervener appeals. Affirmed.

William L. Clay, of Savannah, Ga., for appellant.

H. H. Dean, of Gainesville, Ga., T. M. Cunningham, of Savannah, Ga., and Max Isaac, of Brunswick, Ga. (Dean & Wright, of Gainesville, Ga., on the brief), for appellees.

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before WALKER, BRYAN, and KING, Circuit Judges.

WALKER, Circuit Judge. By an indenture made in the year 1912 between the appellant, John D. Clarke, and the Georgia Coast & Piedmont Railroad Company, the former conveyed to the latter a right of way, 200 feet in width, across General's Island, in McIntosh county, Ga.. That instrument bound the railroad company to maintain openings through any embankment constructed by it on the right of way acquired, so as to permit the passage of water from one side of such embankment to the other. A purpose of that provision was to insure the flow of water, required in the cultivation of rice, to that portion of the island east of the right of way. By intervention in a suit brought for the foreclosure of a mortgage or deed of trust covering the properties of the railroad company, in which suit receivers were appointed, Clarke, after alleging that the receivers, or their authorized agent, with knowledge of the above-mentioned contract, in doing work upon the railroad under the court's orders, so filled in openings in the embankment constructed by the railroad company as to prevent the flow of water from one side of such embankment to the other, prayed that he be awarded damages in the sum of $12,978, that for such amount he be allowed a first lien upon the proceeds of the sale of the properties administered by the receivers, and that he—

"be adjudged to have the right hereafter to place in, through, across, over, and under said embankment such ditches, canals, drains, conduits, passages, and roadways as the contract provides should be made and established where any embankment should be built."

At the time the intervention was filed the property of the railroad company had been sold under a decree of the court, which gave the purchaser the option to discontinue the operation of the railroad and to take up and sell its rails. When the decree on Clarke's intervention was rendered, the railroad had been dismantled, as permitted by the terms of the decree of sale.

The evidence disclosed that formerly rice was grown on a considerable part of the island, but that the use of the land for growing rice, or any other kind of crop, was abandoned more than 20 years ago, and has not been resumed. The evidence indicated that the abandonment of the use of the land for growing rice was due to the increased cost of the labor required, and to the difficulty or impossibility of getting laborers willing to undertake the task, which involves constant work in the wet; the laborers having to work in mud and ditches up to their knees. It well may be inferred that the land will continue to be unavailable for rice farming, except in the possible event of changes in conditions making it possible to get the required labor at a cost that would make the growing of rice on the land profitable.

The master made findings of fact which included the following:

"Whatever damage there has been to the market value of the land was occasioned by filling of the canals, ditches, drains, and roadways, and to this extent destroying the usefulness of that portion of the island to the east of the railroad for the culture of rice. The highest number of acres given in this tract is 75 acres. From the evidence, the highest market value which this

land has, apparently either present or prospective, is for the cultivation of rice. * * * The special master finds that the market value of the land has been reduced and decreased in the sum of $400."

The just-quoted findings were not excepted to on the grounds that there was an absence of evidence to support them, or that they were contrary to the evidence adduced. The court confirmed the findings of the master, and awarded to Clarke $400 damages. In behalf of Clarke it is contended that the court should have awarded to him as damages the amount of the cost of restoring the structure on the right of way to the condition it was in before the openings in the fill or embankment were filled in or closed, which the master found to be the sum of $3,000, but which the appellant's counsel contends was shown by the evidence to be the sum of $4,682.

[1, 2] The appellant is not seeking a decree requiring specific performance of the above-mentioned contract. A result of granting the relief he seeks would be the payment to him, out of the funds of the estate in the court's charge, of the amount of the cost of restoring the openings in the fill or embankment, which amount the appellant could use as he pleases, unless, without his procurement, he is required to use it in the work of restoring the openings. It is not to be supposed that he would choose to expend $3,000 or $4,682 to have work done which would benefit him to the extent of only $400. He is suing for damages only, but claims that he is entitled to recover greatly more than the amount he lost by the breach of contract complained of. Certainly the court should not grant the relief sought by the appellant, if the situation disclosed is such that specific performance of the contract would not properly have been granted, if that relief had been sought. A court of equity exercises a discretion in determining whether the relief of specific performance should be granted or withheld. The relief may be withheld when the granting of it will produce hardship or injustice to either of the parties. Willard v. Tayloe, 8 Wall. 557, 19 L. Ed. 501; Marks v. Gates, 154 Fed. 481, 83 C. C. A. 321, 14 L. R. A. (N. S.) 317, 12 Ann. Cas. 120.

[3] The record shows that the cost of restoring the openings in the fill or embankment would be at least more than seven times the value of the benefit to accrue to the appellant as a result of that work being done. The cost of the work being so much in excess of the benefit to the appellant therefrom, it would be unjust and inequitable to require specific performance. Sanitary District v. Martin, 227 Ill. 260, 268, 81 N. E. 417, 10 Ann. Cas. 227. In the situation disclosed, justice was done by awarding to the appellant the amount of damages he sustained by the closing of the openings. The proper measure of damages is the difference between the value of the land before the complained-of breach of the contract and its value after such breach. Atkinson v. Kreis, 140 Ga. 52, 78 S. E. 465. In the situation disclosed the appellant has no tenable ground of complaint against a decree which awarded him the full amount of the damages he sustained.

The decree is affirmed.