**B. O. Sumner, Appellee, v. John L. Smysor, Appellant.**

Opinion filed December 26, 1933. Rehearing denied February 26, 1934.

GEO. B. RHOADS, for appellant.

SUMNER & LEWIS, for appellee.

MR. PRESIDING JUSTICE EDWARDS delivered the opinion of the court.

On June 30, 1932, appellee and appellant entered into a written contract for the sale of 261.11 acres of land in Lawrence county, owned by the latter; consideration, $6,000; $500 down, and balance to be paid within 30 days; vendee to have option of paying within such time, $4,000 in cash, and giving mortgage for $1,750, running two years, with interest at seven per cent.

The following clause of the contract was the basis of this suit: "It is further agreed that the vendor shall furnish an abstract of title showing a merchantable title to said premises, and deliver to the purchaser, within the said thirty days, a warranty deed for the same, free from all liens and encumbrances except the lien of taxes for the year 1932, and in the event that it is necessary for a court proceeding to remove any clouds to make a merchantable title to the same, the said vendor shall be liable in the sum of not to exceed $200.00 for the expense of such suit."

The same day, the vendor (appellant) executed a warranty deed and deposited same in escrow at the First National Bank of Lawrenceville, to be delivered to the vendee upon the fulfillment of the terms of the contract, and also delivered an abstract of title to the vendee.

On July 7, appellee advised appellant, by letter, that there were defects of title, specifying two: a break back in 1836, when 80 acres were conveyed to Nicholas Johnson, and no subsequent conveyance shown by him; also, that there were certain drainage taxes in the amount of $923.74 due upon the premises, and which were not shown upon the abstract; stating in such letter: "Of course you will be liable for them, and of course they should be deducted from the purchase price." Later, on July 16, appellant, accompanied by his attorney, Judge Tohill, went to the office of appellee for a conference.

The testimony as to what was said here conflicts, appellee stating that he informed appellant of the drainage taxes, and said he wanted them paid, to which the latter replied that he would not do anything about it; also that he (appellee) mentioned other defects of title, and stated that a suit to remove clouds would not bar the rights of any interested parties under disability; that the title could not be made good, and demanded the return of the earnest money. Judge Tohill testified that he did not recall appellant saying that he refused to pay the taxes, and also stated that nothing was said about terminating the contract; furthermore, that he did not remember of appellee's asking for his money back, but that Smysor said he wanted to consider the matter.

Appellant, in his deposition, stated that he said nothing about calling the deal off, or returning the down payment; that appellee asked two or three times to cancel the trade, and for the return of his money; that appellant replied that before he could decide, he wished to talk privately with his attorney; that he and the attorney left for the latter's office, and while there—within 30 minutes of the conclusion of the conference—was served with the summons in this suit.

Later, on July 27, appellant wrote appellee, telling him that he had instructed the bank to pay the drainage taxes, out of the purchase price, and to let appellee have the $200 to quiet the title, as provided by the contract. He also, on the same day, wrote the bank, giving it directions to the same effect.

The suit was brought in assumpsit, to recover the $500 earnest money, to which was pleaded the general issue. At the close of appellee's case, appellant moved for a directed verdict, which was overruled. At the close of all the evidence, each party moved for a directed verdict. That of appellant was overruled, while the court sustained that of appellee, and directed a

verdict in the sum of $519.14, being the earnest money, with interest thereon. Judgment was rendered upon the verdict, and this appeal perfected therefrom.

Both parties having moved for a directed verdict, the effect was to submit the cause to the court for trial without a jury; as held by this court in *Hungate v. New York Life Ins. Co.*, 267 Ill. App. 257.

Appellee takes the position that the abstract failed to show a merchantable title in appellant, and that he had the right, in consequence of such fact, to rescind the contract, and sue to recover the earnest money.

Whether such contention is correct, depends upon the construction of the written agreement of sale, which is to be interpreted to ascertain the intention of the parties, and which is to be gathered from a consideration of the entire contract. The rule governing in such case is stated in *Geithman v. Eichler*, 265 Ill. 579, at page 585: "The intention is to be determined from the language employed, when read in the light of the context of the instrument and such surrounding circumstances as will aid the court in arriving at the true intent and meaning of the parties. *Druecker v. McLaughlin*, 235 Ill. 367, at page 372; *Goodwillie Co. v. Commonwealth Electric Co.*, 241 Ill. 42. It is also allowable to look to the interpretation the parties themselves have placed upon the agreement, for assistance in determining its true meaning. *Storey v. Storey*, 125 Ill. 608; *Vermont St. M. E. Church v. Brose*, 104 Ill. 206."

The contract, tested by the rule just stated, in our opinion does not support the theory of appellee. It will be observed that the agreement requires appellee to make the full payment, either in money, or partly in money, and the balance in the form of mortgage, within 30 days after June 30, 1932. Appellant was obligated to furnish, within such time, a warranty deed for the premises, which were to be free from all

liens and incumbrances, except the lien for taxes for the year 1932; also to furnish an abstract showing a merchantable title, the time for which was not specifically fixed, but it is evident same was to be provided within such 30-day period. Also, if it appeared from such abstract that there were clouds upon the title, which would require a suit to remove, in order to make it merchantable, then and in such case the vendor would be liable for the expense of same, to an amount not exceeding $200.

Appellee, himself a lawyer, drew the contract, hence it may be assumed that he inserted each clause advisedly, and for a purpose.

It seems apparent that the parties contemplated that if appellant, within the 30 days, should tender appellee an abstract and a warranty deed, with the title free of all liens and incumbrances except the taxes for the year 1932, then appellee was bound to take the title, and pay the purchase price, within such period of time; and that if the abstract disclosed a title which was, for other reasons, not merchantable, and there were clouds which would require a suit to remove, in order to render the title merchantable, the vendor would stand the expense of same up to the sum of $200.

Obviously this is true, otherwise why the insertion of the clause as to the suit to confirm the title? Manifestly, such action could not be instituted and carried to a decree, within 30 days. Moreover, it seems clear that appellee should bring the suit for such purpose, as the contract provides that appellant, in such situation, should be liable for the expense of same. Liable to whom? It could only be to the vendee, the appellee herein. If it had been the thought of the parties that examination of the abstract, disclosing à nonmerchantable title, would give rise to an immediate right of rescission on the part of appellee, then the clause, as

to suit to quiet title, is meaningless, and we cannot ascribe to the parties an intention to insert in their contract a provision which could serve no purpose. In addition, the parties seem to have so regarded it, as evidenced by the fact that appellant, in his conversation with appellee, insisted that the clause should cover all clouds, aside from liens and incumbrances; also, in his letter of July 27, 1932, he expressly states that he so understood the matter, gave directions to the bank to pay the taxes, and allow appellee the $200 for the suit to quiet title.

Appellee, in his letter of July 7, 1932, indicates that he likewise so interpreted the contract. Therein, he stated that he had looked over the abstract, and that there was a break in the title, which would require a suit to remove, in the event he should try to secure a federal loan on the land, and that there were unpaid drainage taxes against the premises, which appellant was liable for, and which should be deducted from the purchase price, and that he hoped to hear from appellant soon.

Here, after an examination of the abstract, appellee was calling attention to certain defects of title, and suggesting how same should be corrected. This does not indicate that he regarded the contract as giving him an immediate right of rescission if the contract failed to disclose a merchantable title, but on the contrary, evidences his understanding that appellant was to pay the drainage taxes, and that the other defects in the chain of title should be taken care of, as provided in the clause relative to quieting title.

On July 16, 1933, appellee refused to take the title, demanded repayment to him of the earnest money, and on the same day brought suit for its recovery. This showed his intention to treat the contract as rescinded. *Sluka v. Bielicki,* 335 Ill. 202. Appellant, on such date, still had 14 days in which to pay the taxes and tender

the deed. We think the weight of the evidence clearly shows his willingness and purpose of so doing; also, that he was desirous of having the title, as to the clouds, made merchantable, by the suit to quiet the same; hence he was not, on such date, in default, and appellee had no right to rescind the contract, nor sue for the return of the down payment.

For which reason the judgment is reversed.

*Judgment reversed.*